McCAIN v. STATE.

Opinion delivered February 11, 1918.

1. TRIAL—LIST OF VENIREMEN—RIGHT TO INSPECT.—In a criminal trial it is not error for the trial court to refuse to permit counsel for the defense to inspect a list of special veniremen, called for that case.

2. TRIAL—CRIMINAL PROSECUTION—REPUTATION OF ACCUSED—REMARKS OF TRIAL JUDGE.—In a criminal prosecution counsel sought to establish defendant's reputation as good, by the introduction of certain testimony; in the presence of the jury the court told counsel that he could not prove defendant's good character by witnesses that knew nothing about it, and that he had excluded such testimony from the jury; held, the remarks of the court were not erroneous.

3. APPEAL AND ERROR—EXCLUSION OF COMPETENT TESTIMONY.—It is not prejudicial error to exclude competent testimony, where other witnesses have testified to the same facts.

4. APPEAL AND ERROR—RULING OF COURT—REASON THEREFOR.—If the ruling of the trial court was correct for any reason, a judgment will not be reversed because the court gave a wrong reason for its ruling.

5. CRIMINAL LAW—HOMICIDE—REPUTATION OF DECEASED.—In a prosecution for homicide, counsel for defendant introduced testimony tending to prove deceased's reputation at the time of the killing, for peace and quiet, held, no prejudice resulted from the court's excluding testimony as to deceased's character twelve or fourteen years before the killing.

6. EVIDENCE—CRIMINAL TRIAL—CONDUCT OF THE PARTIES.—In a prosecution for homicide, where testimony of ill-feeling between deceased and accused at the time of the killing had been introduced, evidence that such bad feeling existed four or five years previously, is irrelevant.

7. APPEAL AND ERROR—INSTRUCTION PARTLY INCORRECT.—It is not error to refuse an instruction which, taken as a whole, is not correct.

8. HOMICIDE—SUDDEN PASSION.—Where one kills another in a sudden heat of passion, caused by a provocation apparently sufficient to make the passion to kill irresistible, the offense is manslaughter and not murder.

9. HOMICIDE—DELIBERATE KILLING.—Deliberate killing, without passion, whatever may have been the provocation, is murder.

10. TRIAL—LENGTH OF ARGUMENT OF COUNSEL.—In a prosecution for homicide, the amount of time to be allotted to counsel for argument is within the sound discretion of the trial court.

11. TRIAL—HOMICIDE TRIAL—CONDUCT OF WIFE AND CHILDREN OF DECEASED.—In a prosecution for homicide, while counsel for defendant was arguing the cause, following a certain remark, deceased's widow exclaimed, "* * * that is a lie." The court admonished her not to interrupt. She then, with her children, proceeded to leave the court room; in the rear of the room she screamed and fell, and the children cried aloud, "Our mother is dead." *Held,* there being no evidence that this behavior was prearranged, that it would not constitute a ground for reversing a judgment pronounced upon a verdict of guilty.

12. TRIAL—PRESERVATION OF ARGUMENTS OF COUNSEL.—It is not error for the trial court to refuse to order the argument of counsel to be preserved stenographically. If counsel desire the arguments preserved they should make request of the stenographer to take them down before the arguments begin, or request the court to have the argument preserved.

Appeal from Nevada Circuit Court; *George R. Haynie,* Judge; affirmed.

*J. O. A. Bush,* for appellant.

1. It was an arbitrary ruling and abuse of discretion to refuse defendant the right to see the list of jurors summoned, or have a copy or time to investigate the personnel of the jury.

2. It was error to exclude the testimony of defendant's character witnesses. The evidence was competent. 1 Gr. Ev. § 461*d,* par. 2; 59 Ark. 54.

3. The court expressed an opinion as to the weight of the testimony in its remarks. 43 Ark. 289; 45 *Id.* 165, 292; 49 *Id.* 165; 53 *Id.* 381; 58 *Id.* 108; 25 S. W. 282; 43 Ark. 73.

4. The evidence as to character was not too remote. Jones on Ev. § 859; 51 Ark. 144.

5. The court erred in its instructions given and refused.

6. The court limited the argument of counsel to one hour and a half.

7. The presence and action of Mrs. Slagle and children was prejudicial.

8. The remarks of the State's attorney were highly prejudicial. 117 Ark. 551; 34 L. R. A. (N. S.) 811; 106 Ark. 370; 58 *Id.* 368.

9. The stenographer was not permitted by the court to take down the language and remarks of the Prosecuting Attorney. Kirby's Digest, § 1330.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. There was no error in refusing to let defendant see the list of jurors. Neither side was allowed the privilege. There was no discrimination and no violation of law. Kirby's Digest, § 2348.

2. There was no error in the exclusion of testimony as to character. 130 Ark. 322. Some of the evidence was cumulative merely, other was too remote and incompetent. No prejudice is shown. Kirby's Digest, § 2605; 100 Ark. 132; 28 S. W. 152.

3. Mark McCain's testimony was inadmissible. 84 Miss. 758; 99 N. W. 179.

4. There is no error in the instructions refused. Only part of No. 8 was correct. The 10th is inaccurate and the 15th is erroneous, and not the law. Addison, 155, 162.

5. There was no error in limiting the argument. It was within the sound discretion of the court and not capricious or arbitrary. 38 Ark. 304; 100 Ala. 26; 14

Neb. 572; 90 Ill. 117; 149 Ky. 495; 21 Mo. 257; 70 N. C. 241; 55 Wash. 675; *Holt* v. *State,* ms. See also 88 Neb. 464; 60 Tex. Cr. 236; 148 Ky. 80; 122 Mich. 284; 136 Mo. 74; 110 Ala. 11; 42 Wash. 540.

6. The widow and children had a right to be present, and their action is no ground for reversal. 109 Ark. 138, 149.

7. The remarks of the prosecuting attorney were not prejudicial nor error. 100 Ark. 232; 91 *Id.* 576; 94 *Id.* 548; 85 *Id.* 514; 65 *Id.* 475; 95 *Id.* 172.

8. The request for the stenographer to take down the remarks of counsel was not made in due time. No prejudicial error is shown.

WOOD, J. Appellant was indicted for the crime of murder in the first degree in the killing of J. P. Slagle. He was convicted of murder in the second degree, and sentenced by the judgment of the court to imprisonment in the State penitentiary for a period of seven years. From that judgment he appeals.

The testimony for the State tended to prove that bitter feeling existed between Slagle and the McCains,— Mark, the father, and Joe and Henry, his sons; that a short time prior to the killing of Slagle he had kicked Joe McCain without provocation, which had greatly aroused the anger of the McCains; that they entered into a conspiracy to kill Slagle, and that he was killed as a result of such conspiracy. On the other hand, the testimony for the appellant tended to prove that he killed Slagle in an attempt to protect his father and brother from a murderous assault made upon them with a pistol.

(1) The grounds urged for reversal will be considered in the order presented in appellant's brief. The court had ordered the sheriff to summon a special venire of forty men from which to select a jury to try the appellant. The court directed the sheriff not to permit anyone to see the list of men summoned for the special venire. The reason given by the court for such direction to the sheriff was that at a former trial, after it was

ascertained who the jurors were a great many of them had been summoned as witnesses, and for that reason, had been disqualified to sit as jurors.

There is no provision of law requiring that a list of the names of the special venire whom the sheriff has summoned under the direction of the court shall be furnished the parties before a case is called for trial. In the absence of a statute conferring such right, there could be no prejudicial error in the refusal of the court to grant appellant that privilege. The court's direction to the sheriff, it appears, was not to permit any one to see the list of men. It was not shown that the sheriff disobeyed the orders of the court, and the direction was as fair to the appellant as to the State. The appellant was not entitled to have any particular jurors try his case and his rights were fully protected if he secured a panel, summoned under the orders of the court, who, at the time they were called to answer as to their qualifications, were found to be duly qualified.

(2) Rufus Kirk testified that he had been acquainted with appellant about seven years; had lived a close neighbor to him during that time. He had never heard anything against appellant's reputation. While on his direct examination he testified that he knew the general reputation of appellant in the community in which he lived for being a quiet law-abiding citizen and that his reputation was good, yet, on his cross-examination he stated that he supposed his reputation was all right, that he had never heard anything against it, and for that reason he thought his reputation was good. The court, over the objection of appellant, excluded the testimony.

Witness Harris testified that he knew appellant pretty well all his life; had lived within six or seven miles of him; was acquainted with his general reputation in the community as a law-abiding, quiet and peaceable young man, and that it was good. On cross-examination he stated that was what he believed about him, and what he knew from his association with him. On direct examination he testified that he had never heard anything

against him, and in answer to the direct question, "Did the people generally regard him as a good boy, do you know?" he answered, "Yes, sir." And then on redirect examination he stated it was what he knew himself. He knew that appellant was a good boy.

The court thereupon said to the jury, "You will not consider his reputation by what he knew himself; that is not proper." The witness was then excused and another witness called on behalf of the defendant, but before he proceeded to testify, the record shows the following colloquy between the court and Mr. Bush, the attorney for the appellant:

"The Court: Now, Mr. Bush, I don't want to shut you off, but I cannot sit up here all day and listen to testimony of this kind.

"Mr. Bush: If the court please, technicalities come up—if they will concede his reputation as established—

"The Court: It is not a question of technicality; I am trying to govern this case by the rules of law—

"Mr. Bush: I understand, but I don't mean any reflection on the ruling of the court—

"The Court: If you have got any witnesses who under the rules of law know the general reputation of the defendant, I want you to get them in here.

"Mr. Bush: I think they all do.

"The Court: Well, not according to the ones you have brought on the witness stand. If you have got witnesses who know the general reputation of the defendant, you are entitled to produce them and I am willing to listen to a reasonable number of them, but I don't want to sit here and listen to witnesses who don't know anything about it.

"Mr. Bush: I want to object to the statement of the court as expressing an opinion on the weight of the testimony.

"The Court: No, I don't mean to do that. I have ruled out all the testimony that is not competent here. I am referring to the testimony that I have held not com-

petent to go to the jury and I am not expressing an opinion on the weight of the testimony."

Counsel for apellant contends that the effect of the court's remarks, as above set forth, in the presence of the jury, was to tell them that no competent evidence of appellant's good character had been produced. The concluding remarks of the presiding judge show clearly that he was not expressing an opinion upon the weight of the testimony of those witnesses that he had held to be competent. This testimony he had allowed to go to the jury, but the testimony of the witnesses that he considered incompetent he had excluded, and his remarks referred to that testimony.

It can not be fairly inferred, when the colloquy between the court and counsel is taken as a whole, that the court meant to say to the counsel, in the presence of the jury, that he had produced no evidence of the good character of the appellant. On the contrary, the effect of the court's remarks was to say, in the presence of the jury, that it was not competent to prove the good character of appellant for peace and quiet by witnesses who did not know his general reputation, and that such testimony he had excluded from the jury; but that the testimony of the witnesses who were acquainted with his general reputation, and who had testified to his good character, he had permitted to go before the jury for their consideration, and that he did not mean by what he had said to express any opinion upon the weight of that evidence.

There were no prejudicial errors to appellant in the remarks of the court.

(3) So far as the testimony of the witness Harris is concerned, it does not appear that appellant reserved any exceptions to the ruling of the court in saying to the jury, "You will not consider his reputation by what he knew himself. That is not proper."

The testimony of the witness Kirk was competent. *Cole* v. *State*, 59 Ark. 50. But it was not reversible error to exclude the same for the reason that a dozen other witnesses had testified to the good character of appel-

lant, and there was no attempt upon the part of the State to prove otherwise. *Striplin* v. *State,* 100 Ark. 132; *Brooks* v. *State,* 85 Ark. 376.

The testimony of Kirk was but cumulative, and it would have been within the discretion of the court to have excluded it on that ground.

(4) If the ruling of the court was correct for any reason, it will not be reversed because the court gave the wrong reason for its ruling.

The appellant offered to prove by J. M. Hicks, who had lived as a neighbor to Slagle about fourteen years before the killing, and also by T. J. Shell, who was his neighbor about twelve or thirteen years before the killing, that they knew the general reputation of Slagle in the community where he lived and that he had the reputation of being a dangerous, insulting, overbearing and boisterous man. The court refused to permit this proof.

(5) Appellant had proved by five witnesses that the character of Slagle at the time of the difficulty was that of a troublesome, quarrelsome, dangerous man; and he also proved by one witness that such was his character about two years before the killing, and by another that such was his character four or five years before the killing.

The only pertinent fact that could have thrown any light upon appellant's defense was the character of Slagle as being that of a violent and dangerous man at the very time of the killing, and since appellant proved that such was Slagle's character at the very time of the killing no possible prejudice could have resulted to appellant in the ruling of the court in excluding the testimony to the effect that such was the character of Slagle twelve or fourteen years before the killing.

(6) The court did not err in refusing to permit appellant to prove by his father that Slagle had slapped appellant's grandmother's jaws four or five years before the killing. It was abundantly established by other testimony that bad feeling existed between the appellant and Slagle at the time of the killing, and testimony that

such bad feeling had existed four or five years before, and the particular causes for such bad feelings would have introduced collateral matters, wholly irrelevant to the issue which the jury was called upon to try. *Thompson* v. *State,* 84 Miss. 758. The court did not err in refusing to permit appellant to prove by his father that appellant had been kept in jail for six months and was not permitted to make bail, for the reason that these were entirely irrelevant issues.

The appellant complains of the refusal of the court to grant the following prayers for instructions:

"8. The indictment in this case is a mere form or accusation, and is not any evidence whatever of the guilt of the defendant, and no juror in this case should permit himself to be, to any extent whatever, influenced against the defendant on account of the indictment, or of any preconceived opinions of the guilt or innocence of the defendant, or of any rumors that he may have heard, or of any evidence of public opinion against him, or of any feeling or sign of approval or disapproval of bystanders; but his opinion as to the facts should be made entirely from the evidence of the witnesses as given in the trial of this case."

"10. You are further instructed that the State alleges and undertakes to prove that a conspiracy existed between Mark McCain, Henry McCain and Joe McCain, to kill the deceased, and that charge is based upon circumstantial evidence. You are therefore instructed that before you can find that the defendant is guilty of entering into a conspiracy to take the life of the deceased, you must not only find that evidence in the case is consistent with that theory of his guilt, but you must also find that it is inconsistent with every other reasonable hypothesis than that of his guilt."

"15. You are further instructed that as a matter of law there can be no murder without malice and that murder is committed only when no considerable provocation appears. Therefore, if you find from the evidence that the conduct of the deceased was such as to offer to the

defendant a serious and considerable provocation, then you will acquit the defendant of the charge of murder."

(7)   So much of prayer No. 8 as told the jury that the indictment in the case was not any evidence whatever of the guilt of the defendant, and that the opinion of the jurors as to the facts should be made entirely from the evidence of the witnesses as given in the trial was correct; but these correct statements of the law were connected with other statements which were abstract, argumentative, and therefore calculated to confuse the jury. The court therefore did not err in refusing the prayer, even though some portions of it were correct declarations of law.   It is not error to refuse an instruction which, taken as a whole, is not correct.   Such portions of prayer No. 8 as were correct were fully covered by instructions which the court gave, in which the jury were told that before they would be authorized to convict the appellant they must find from the evidence in the case beyond a reasonable doubt that all of the material allegations of the indictment were true, and that at the outset of the trial the appellant was presumed to be innocent, and that this presumption shielded him from conviction unless overcome by proof beyond a reasonable doubt.

Prayer for instruction No. 10 was predicated upon the assumption that the only evidence of conspiracy in the case was circumstantial.   Such assumption was not correct, for it ignored the direct testimony on the part of the State tending to prove that the McCains—Mark, the father, and Joe and Henry (appellant), his sons— were in a conspiracy to take the life of Slagle.   The issue as to the conspiracy, under the evidence, was fully and correctly stated in appellant's prayer for instruction No. 9,* which the court granted.

_____

*"It is charged by the State that a conspiracy existed between the defendant and his father and brother to kill the deceased.   You are instructed that before you can convict the defendant of being guilty of conspiracy to kill the deceased, that fact must be proved to your satisfaction, beyond a reasonable doubt.   And if you should find that Mark McCain and Joe McCain entered into a conspiracy to kill the deceased, still that fact would not justify you in finding the defendant guilty, unless you find, beyond a reasonable doubt, that he, the defendant, entered into such conspiracy."   (Reporter.)

The court did not err in refusing appellant's prayer for instruction No. 15. It was inherently erroneous.

(8)   Where one kills another in a sudden heat of passion, caused by a provocation apparently sufficient to make the passion to kill irresistible, the offense is manslaughter and not murder, because, under such circumstances, the existence of malice aforethought is excluded; for even though there might be a serious and considerable provocation, this might not be sufficient to reduce the grade of the homicide from murder to manslaughter. Such a provocation might not be apparently sufficient to arouse the passions and to make the same irresistible. Besides, even if there were a serious and considerable provocation, and one apparently sufficient to arouse an irresistible passion to kill, such provocation would have to exist at the very time of the killing or so shortly before that it could not be said that there had been cooling time, or time for the passion to have subsided.

(9)   "Deliberate killing, without passion, whatever may have been the provocation, is murder. For, if the killer was cool and master of his passion, and in the full exercise of his judgment, the principle of responsibility thus remaining, he must suffer the full effect of his conduct." *Pennsylvania* v. *Bell* (Pa.), Addison 156, 162.

(10)   The court limited the argument to an hour and a half to each party. There were three attorneys representing the appellant, and they divided the time between them, the first two taking twenty minutes each and the last fifty minutes. The appellant contends that, inasmuch as there were seventy-seven witnesses and twenty-six declarations of law, and considering the volume of testimony and intricate questions involved, there was not sufficient time for his counsel to properly present his case to the jury.

In *Green* v. *State,* 38 Ark. 304, 319, this court, speaking through ENGLISH, C. J., said: "The order of argument, when a number of counsel are engaged, the subjects, length and range of their discourses to the jury, must necessarily be left to the sound discretion of the presiding

judge; and unless the bill of exceptions shows, as it does not in this case, that such discretion was abused in making, or refusing to make, rulings in relation to the argument, it is not the subject of review here." See also other cases cited in the Attorney General's brief.

Although the instructions were numerous and the testimony was voluminous, the trial court doubtless concluded that the salient and essential features of the evidence and the law applicable thereto could be fully presented without any prejudice to appellant's rights within the time allotted. And although it occurs to us, from an examination of the record, that the time was rather short to present a cause of such magnitude, nevertheless we are not convinced that the trial court, in so allotting the time, acted in a capricious or arbitrary manner, and therefore we can not say that the court abused its discretion, and that the appellant was prejudiced by the court's ruling.

(11) The record shows that, "During the trial Mr. Bush, one of the attorneys for the defendant, while making the closing argument for the defendant, said, 'Mrs. Slagle does not deny that she told Mrs. Perry Smith on the day of the killing that Mr. Slagle and Perry Smith had fixed it all up the day before, and Slagle had brought it on himself and she did not want the McCains punished,' when Mrs. Slagle arose and said, 'If the court please, that is a lie.' The court admonished Mrs. Slagle not to interrupt Mr. Bush. She and her children then started out of the court room, and on reaching the rear of the court room she screamed and fell, and her children were very much excited and cried aloud, 'Our mother is dead.' "

"The widow and children had the right to be present during the argument of counsel, and the case will not be reversed because they shed tears." *Tiner* v. *State*, 109 Ark. 138, 149.

There is nothing to indicate that this spectacle was a stage-setting, prearranged by those interested in the prosecution for the purpose of bringing to bear an undue influence upon the jury. It was nothing more nor less

than a sudden outburst of emotion upon the part of the widow and children of Slagle, whose nerves had been so wrought upon and strained by the tragic and irreparable loss to them of husband and father, and the events connected with the trial ,of his slayer, that they doubtless were wholly incapable, for the moment, of repressing their emotions. The nature of the occurrence was such that it is manifest that the court could not have anticipated it, and the ruling of the court, admonishing Mrs. Slagle to desist, it occurs to us, was sufficient, under the circumstances, to indicate to the jury that such conduct on her part was improper. Appellant and his counsel seemed satisfied at the time that it was not necessary for the court to make any further or additional ruling in the premises, for they did not ask for such ruling.

It is not at all likely that the jurors, as sensible men, anchored by their oaths to the law and the evidence, would have been swept from their moorings by this storm of hysteria from the relatives of the deceased.

We have examined the remarks of the prosecuting attorney in his closing argument, as set forth in the brief of counsel for appellant. It could serve no useful purpose to encumber the record by setting them forth in detail, since we have concluded after a careful analysis of them, that they were no more nor less than mere expressions of opinion by the attorney uttering them as to the character of the crime committed by appellant, and caustic denunciations of such crime from the prosecutor's viewpoint of the evidence adduced and the law as given by the court. We are not convinced that the remarks transcend the bounds of legitimate argument and there was no reversible error therefore in the ruling of the court in refusing to admonish the jury not to consider them.

The bill of exceptions recites that there were other statements made by the prosecuting attorney which were objected to by the defendant, but the language could not be preserved because the presiding judge would not permit the official stenographer to make a note of it.

(12)   The ruling of the court presents no reversible error.   The statute defining the duty of the official stenographer is in part as follows:

"* * * And he shall, when so requested by either party, make a stenographic report of all oral proceedings had in such court, including the testimony of witnesses with the questions to them, *verbatim,* the oral instructions of the court and any further proceedings or matter, when directed by the presiding judge or upon the request of counsel so to do," etc.   Kirby's Digest, § 1330.

The stenographer was not directed by the presiding judge to make a report of the arguments of counsel as they were being made, nor was there any request of counsel to have the arguments reported before the arguments began.   There was no error in the ruling of the court refusing to direct the stenographer to take down the remarks of the prosecuting attorney, at that stage of the proceedings.   If counsel desire the arguments preserved they should make request of the stenographer to take them down before the arguments begin, or request the court to have the arguments preserved.   There is no error in refusing to require the stenographer to report the version of appellant's counsel of what the prosecuting attorney had said in argument.   Manifestly such interruptions as here insisted upon would greatly disturb the orderly progress of the trial, and can not be tolerated; such procedure was not contemplated by the statute.   The appellant has not preserved by bill of exceptions the other statements of the prosecuting attorney which he says were objectionable.

There is no reversible error in the record.   The judgment is therefore affirmed.