GUNTER *v.* WILLIAMS.

Opinion delivered February 24, 1919.

1. APPEAL AND ERROR.—In the absence of specific objection, appellant cannot complain of an instruction as not happily framed.

2. PRINCIPAL AND AGENT—AUTHORITY TO SELL—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to establish authority of an agent to sell property.

3. SAME — RATIFICATION OF SALE BY AGENT — JURY QUESTION.— Whether under the facts there was a ratification of a sale by an agent *held* for the jury.

4. REPLEVIN—VALUE OF PROPERTY—EVIDENCE.—Evidence that, certain property was worth from $150 to $200 will sustain a finding that it was worth $175.

5. SAME—INSTRUCTIONS.—Where a defendant in replevin who had cross-complained for the property testified that he had sold a pump sought to be replevied to one other than the plaintiff, the court properly instructed that in such case he was not entitled to recover.

6. TRIAL — INSTRUCTION — IGNORING ISSUE. — In action to replevy property claimed to have been sold to plaintiff by defendant's agent, an instruction that the burden was on plaintiff to prove the agent's authority was properly refused as taking from the jury the question of ratification.

7. APPEAL AND ERROR — RESERVATION OF GROUNDS OF REVIEW — REFUSAL OF INSTRUCTIONS.—One who has requested an improper instruction cannot complain because the court refused to give it.

8. TRIAL—INSTRUCTIONS—REPETITION.—It was not error to refuse to give an instruction already covered by the court's instructions.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

STATEMENT OF FACTS.

D. R. Williams, doing business as Williams Brothers brought an action in replevin against John Gunter to recover an iron tank alleged to be of the value of $200. John Gunter filed an answer in which he denied that Williams was entitled to the possession of the tank and filed a cross-complaint against Williams for the recovery of certain valves, pipes and tubes, with the value and particular description of each article stated therein.

According to the testimony of H. A. McDonald, a witness for the plaintiff, he sold the iron tank to the plaintiff, together with some fittings and shaftings attached thereto and John Gunter gave him the authority to make the sale. He sold the tank to Williams for $75 and gave him a written bill of sale therefor as agent for John Gunter. He also procured the brother of John Gunter to sign the bill of sale. John Gunter had bought some old distilling property from the government together with the land on which it was situated. He carried McDonald down to view the property and appointed him as his agent to sell it. He pointed out some wooden tanks as well as the iron tank in question. Subsequently John Gunter went to the State of North Carolina on account of the illness of his father and while he was gone McDonald sold the two wooden tanks for the prices designated by Gunter and paid the price less his commission to the brother of Gunter. McDonald thinks that the defendant put the price of $100 on the iron tank; but before he sold the tank to Williams, McDonald went to the defendant's son and asked him if his father had put any price on the iron tank and the son replied that his father had put a price of $75 on it just as it stood with the shaftings and other fixtures attached to the tank. McDonald then sold the tank to Williams with the fixtures attached for the sum of $75 and kept $25 as his commission and paid the remaining $50 to the brother of the defendant.

On cross-examination McDonald stated that he met the defendant on the street after he had returned from

North Carolina and he complained that McDonald had sold the tank for $75, saying that he had put a price of $100 on it to him. McDonald told him that his son had stated that his father had left a price of $75 on the iron tank and the defendant did not deny that he had done this. The defendant made no complaint until a week or ten days after he came back from North Carolina and this was several weeks after the sale had been made. McDonald further stated on cross-examination that he had general authority from John Gunter to sell all of the property at the distillery and that Gunter had told him to sell anything there including the building and lot.

According to the testimony of D. R. Williams, he bought the iron tank and paid $75 for it on the 31st day of July, 1917. He did not remove the tank right away because he had no particular need for it and on about the 15th day of September John Gunter came into his office and complained about the sale of the tank. He said that McDonald hadn't gotten enough money for it and that he could sell it for $200. He offered Williams his money back, but the latter refused to take it saying that he had bought the property in good faith. Williams denied that he had gotten some of the property mentioned in the cross-complaint and stated that the property he did get was junk and not worth over $6; that it was attached to the tank when he bought it and was regarded as a part of the tank in the contract of sale; that Gunter had told him he had sold the pump to Leo Bercher.

According to the testimony of John Gunter he never appointed H. A. McDonald to sell the distillery property for him. He only showed him the property and told him if he could find a buyer and he made a sale that he would pay McDonald for his trouble. He told McDonald the price of the small tanks was $20 each and the iron tank was $100; that he did not want to sell anything but the tanks and that nothing was offered for sale except the tanks and the pump which he himself sold to Leo Bercher for $25; that he went to North Carolina in July to attend the bedside of his father and remained with

him until the 7th day of September, 1917; that his brother wrote him that McDonald had sold the iron tank for $75 and paid him $50; that he wrote back and asked ·what had become of the other $25 and that his brother replied that McDonald had kept it; that he repudiated the whole transaction and offered Williams his $75 back when he returned to Fort Smith; that he wouldn't have sold the property for $75 because he could get $150 or $200 for the tank alone; that as soon as he found out all the facts, he repudiated the transaction and offered Williams his money back; that his brother only represented him in running his barbecue stand and did not have any authority to sell the property in question.

      According to the testimony of Hugh Gunter, a son of John Gunter, before the latter went to North Carolina he told the former that he could put a price of $75 on the iron tank just as it stood. McDonald went by to see him one day and asked him what price the defendant had put· on the tank. Hugh Gunter took McDonald down and showed him the tank and told him that the defendant had put a price of $75 on it just as it stood and that he, Hugh Gunter, could sell the tank for that price.

      The jury first returned a verdict for the plaintiff and assessed the value of the property at $200. The court then told the jury that the plaintiff had all the property in his· possession except the tank and that it was the duty of the jury to find the value of the tank alone in its verdict. Thereupon the jury retired and later brought into court a verdict for the plaintiff and placed the value of the tank at $175. The case is here on appeal.

      *T. S. Osborne,* for appellant.

      McDonald was not an agent of appellant to sell anything. If so, he could only sell the tank at the fixed price of $100. His acts were *ultra vires* and void and appellant did nothing to ratify the sales. He did not know of the sale until long afterwards and when he learned the facts repudiated the whole thing, which was his right and duty to correct a fraud. The verdict is·against the

law and the evidence, is excessive and the court erred in its instructions. 152 Iowa 291; 132 N. W. 417; 27 Am. & E. Ann. Cases, 1326, and note; 90 Ark. 104; 117 S. W. 1080; 38 Cyc. 1602; 47 Ark. 378; 1 S. W. 694 (697); 37 Ark. 164.

*Harry P. Daily,* for appellee.

Whether McDonald was the agent or not to sell, and was acting within the scope of his authority was settled by the jury under proper instructions. 103 Ark. 79. Any seeming error in instructions refused was corrected by others given on the court's own motion.

HART, J., (after stating the facts). It is first contended that the court erred in giving instruction No. 1 at the request of the plaintiff. The instruction is as follows: "The jury are instructed by the court that if John Gunter authorized the sale of this property and after McDonald had sold same ratified his action, plaintiff should recover, even if you should find that McDonald exceeded his authority in the first instance."

The instruction is not very happily framed, but this could have been met by a specific objection to it. Having made no complaint in the court below on this account, the defendant is in no attitude to complain here.

His chief objection, however, to the instruction is that there was not sufficient evidence in the record upon which to predicate an instruction on ratification. We do not agree with counsel in this contention. According to the testimony of McDonald the defendant made him his agent to sell the property involved in controversy. The defendant himself admits that he put a price on the property and was to pay McDonald for his trouble in assisting him in case he made a sale of the property himself. Be that as it may, under the evidence of McDonald the jury was warranted in finding that he was the agent of the defendant for the sale of the property. An agent acting in excess of authority is a very different thing from one acting in the absence of all authority. Hence in considering whether the facts and circumstances of a

particular case are sufficient evidence of a ratification, the distinction has been made between the unauthorized act of an agent, where the relation of principal and agent already exists, and that of a mere volunteer or stranger. In the former case it is said that an intention to ratify will always be presumed from the silence of the principal after being informed of what has been done on his account, while in the latter case it has been said that there exists no obligation to repudiate the transaction, nor will silence be construed into a ratification. *Dierks Lumber & Coal Co.* v. *Coffman,* 96 Ark. 505.

The jury might have found from the evidence that McDonald sold the tank together with the pipes and other things attached to it to Williams on the 31st day of July, 1917, and gave him a written bill of sale therefor; that this was done after the defendant's son had told McDonald that the defendant had placed a price of $75 upon the tank as it stood; that Williams paid the purchase price of the tank and that McDonald retained a commission of $25 and paid the balance to the defendant's brother. The defendant by letter was apprised of this fact and instead of repudiating the transaction he wrote and asked his brother what had become of the other $25. It was not until about the middle of September when he had been home a week or ten days that he attempted to repudiate the transaction. He had knowledge of all the material facts when the sale was first made. The question of whether or not McDonald was to have a commission out of the sale from the defendant was one that did not concern the plaintiff as purchaser. Gunter knew that he had placed a price of $100 upon the tank in his conversation with McDonald. He knew that McDonald had sold the tank for $75. He knew that he had put a price of $75 on the tank to his son. At least the jury might have found this to be true from the testimony of his son. His chief objection to the sale at the time seems to have been that all the money was not paid to him. Hence under all the circumstances we think there was sufficient legal evidence upon which to submit

to the jury the question of ratification of the sale by the defendant. According to the defendant's own testimony (and this seems to have been all the testimony on the subject) he could have sold the tank for $150 or $200. This testimony was sufficient to warrant the jury in finding the value of the tank to be $175.

It is contended that the court erred in giving instruction No. 2. The instruction reads as follows:

"If you find that McDonald was the general agent to sell the property at the old distillery, then Gunter is bound by all his acts within the apparent scope of his authority."

It is claimed that there is no testimony upon which to base this instruction. We do not agree with counsel in this contention. McDonald testified in positive terms that he had general authority from the defendant to sell all of the property at the distillery.

It is next contended that the court erred in giving instruction No. 3 at the request of the plaintiff, which is as follows: "If you find from the evidence that John Gunter sold the pump to Leo Bercher and that Bercher is the owner of the same, then Gunter is not entitled to recover same."

There was no error in giving this instruction. According to the testimony of the defendant himself (which was all the evidence there was on the subject) he had sold the pump to Leo Bercher. Assuming that to be true, he is not concerned with who has possession of the pump. It does not belong to him. If it belongs to Bercher, that is a question that does not concern the defendant. The defendant could only be interested in recovering his own property. He does not show that he had any special ownership in the property which would entitle him to recover possession of it from the plaintiff.

It is next insisted that the court erred in refusing to give instruction No. 1 asked by the defendant. The instruction is as follows: "The burden of proof is on the plaintiff to prove by a preponderance of the evidence that McDonald was the agent of John Gunter, the de-

fendant, to make a sale of the tank and property involved in this action, and before you can find for the plaintiff you must so find that such authority was given.''

· There is no error in refusing to give this instruction. It takes from the jury all consideration of the question of ratification of the sale and makes it its duty to find for the defendant unless it should find that the plaintiff had authorized McDonald to make the sale of the tank. One who has not asked a proper instruction on the subject cannot complain of the ruling of the court in refusing the instruction as asked. *West. Union Tel. Co.* v. *Ford,* 77 Ark. 531; *Horton* v. *Jackson,* 87 Ark. 528; *Holmes* v. *Bluff City Lbr. Co.,* 97 Ark. 180; *Hays* v. *State,* 129 Ark. 324, and *McCain* v. *State,* 132 Ark. 497.

It is also contended that the court erred in refusing to give instruction No. 2 asked by the defendant. The instruction is as follows: ''If you find that McDonald exceeded his authority in making said sale, and the defendant, John Gunter, repudiated the transaction within a reasonable time after he learned all the facts in the case, the defendant had a right to repudiate the transaction and the same would not be ratified, although a part of the purchase price may have been deposited to Gunter's credit. And if you find that Gunter repudiated said sale within a reasonable time after he learned all the facts in the case, and that McDonald exceeded his authority, it is your duty to find for the defendant.''

The court did give instruction No. 1, which is as follows: ''If the jury find that McDonald exceeded his authority in the sale of this property and that Gunter on learning all the facts in connection with the same repudiated the transaction and tendered back the purchase money within a reasonable time, you should find for the defendant.''

A comparison of the two instructions will show that essentially all the matters embraced in instruction No. 2 asked for by the defendant are embraced in instruction No. 1 given on the court's own motion.

We find no prejudicial error in the record and the judgment will be affirmed.