STEELE *v.* STATE.

Crim. 4037

Opinion delivered July 12, 1937.

*M. L. Reinberger* and *Chrisp & Nixon,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

SMITH, J. Appellant was tried under an indictment charging him with the crime of murder in the first degree, alleged to have been committed by shooting and killing Victor G. Nordstrom. He was convicted of voluntary manslaughter and given a sentence of five years in the penitentiary, and has appealed.

Appellant owned and operated a restaurant in the city of North Little Rock, which remained open both day and night. Jack Mann was employed there, and became drunk and boisterous on the night of December 13, 1936. He had some powder, referred to as itching powder, portions of which he poured on appellant and on patrons of the cafe then present. Appellant's wife discharged Mann because of his conduct and paid him off, and Mann was ordered to leave the cafe, which he declined to do. Appellant appears also to have been under the influence of intoxicants, though probably not to the same extent as was Mann.

There was testimony to the effect that Mann began cursing Woody Adkins in the cafe, and appellant interfered to protect Adkins. Appellant shot Mann, and the same shot killed Nordstrom, a bystander.

The theory upon which the case was defended is reflected in two instructions requested by appellant, both of which were refused by the court, and the question presented on this appeal is whether these instructions, or either of them, should have been given. They read as follows:

"No. 1. You are instructed that the defendant, as owner of the Post Office Cafe, had a right to repel any felonious attack on his guests, or employees, and if you believe from the testimony in this case that Jack Mann was about to make a felonious attack on Woody Adkins, who was a guest of the defendant, and that the defendant made an effort to repel the same and in so doing had to take the life then you are instructed to acquit the defendant.

"No. 2. You are instructed that if you believe from the testimony that the defendant was attacked in his own place of business by Jack Mann and that Jack Mann was going to shipwreck the place, you are instructed that the defendant did not have to retreat, but that he had a right to kill his assailant if this is apparently necessary to save his own life. You are further instructed that the defendant does not have to leave his own premises to escape his assailant."

It may first be said that the court gave numerous and correct instructions defining the law of self-defense, that is, the right of appellant to defend himself against the assault about to be committed upon him by Mann; but these instructions do not go to the point raised in instructions 1 and 2, set out above. Was it error to refuse them?

So much of instruction No. 1 as declares the law to be that appellant, as owner of the cafe, had a right to repel any felonious attack on any of his guests or employees is a correct declaration of the law. The law is so stated in the chapter on Excusable or Justifiable

Homicide in volume 1 of Michie on Homicide. But the instruction does not properly define the conditions under which this right may be exercised. It did not state that the defendant could use no more or greater force than was reasonably necessary for the purpose of protecting his patrons, and that in using this force he should be free from fault or carelessness. He could not kill the assailant of his patron merely because the patron had been assaulted, nor could he, acting without fault or carelessness, use more force than was reasonably necessary to protect his patron from the assault.

Instruction No. 2 is open to the same objection. The hypothesis of this instruction has no logical relation to its conclusion. It states that if Mann was going to shipwreck the place appellant had the right to kill him if this was apparently necessary to save his own life, and concludes with a correct declaration of law to the effect that appellant was not required to leave his own premises to escape his assailant. There is an apparent implication that one has the same right to kill to protect his property from shipwreck that he has to protect his own life; at least, the instruction is not clear upon that question. One does not have the same right in the first instance which he has in the latter. The law of the subject was reviewed by Justice Battle with characteristic thoroughness in the case of *Carpenter* v. *State,* 62 Ark. 286, 36 S. W. 900, to which reference is made for a full discussion of the question.

In the case just cited two neighboring farmers had quarreled over a gap in a fence through which the stock of one entered upon the fields of the other. There was testimony to the effect that the deceased, who was killed by Carpenter, refused to permit Carpenter to repair the fence, and cursed Carpenter and drove him away. Upon his trial Carpenter testified that he killed his neighbor in resisting a forcible trespass. The opinion in the case quotes §§ 1670, 1671, 1672 and 1676, S. & H. Digest, which now appear as §§ 2369, 2370, 2371 and 2375, Crawford & Moses' Digest. These sections define "Justifiable and Excusable Homicide." The first sec-

tion cited reads as follows: "No. 2369. Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, person or property, against one who manifestly intends or endeavors, by violence or surprise, to commit a known felony."

Judge BATTLE said these sections of the digest were declaratory of the common law. Construing these statutes Judge BATTLE said: "The circumstances (of the killing) must be such as to impress the mind of the slayer, without fault or carelessness on his part, with the reasonable belief that the necessity for killing to prevent the felony was immediate and impending, and the danger imminent." It will be observed that instruction No. 1 omits these qualifications.

Upon the question of one's right to defend his property Judge BATTLE said: "But the right to defend property against one who manifestly intends or endeavors, by violence or surprise, to commit a known felony, to the extent of slaying the aggressor, does not include the right to defend it, to the same extent, where there is no intention to commit a felony. A man may use force to defend his real or personal property in his actual possession against one who endeavors to dispossess him without right, taking care that the force used does not exceed what reasonably appears to be necessary for the purpose of defense and prevention. But, in the absence of an attempt to commit a felony, he cannot defend his property, except his habitation, to the extent of killing the aggressor for the purpose of preventing a trespass; and if he should do so, he would be guilty of a felonious homicide. Life is too valuable to be sacrificed solely for the protection of property. Rather than slay the aggressor to prevent a mere trespass, when no felony is attempted, he should yield, and appeal to the courts for redress. Ordinarily, the killing allowed in the defense of property is solely for the prevention of a felony."

It will be observed that instruction No. 2 was not predicated upon the right of one to kill to prevent the commission of a felony, and insofar as it declares a

man's right to kill his assailant, if this is apparently necessary to save his own life, it may be said that the instructions of the court upon the right to kill in necessary self-defense was fully and correctly declared.

We conclude, therefore, that neither instruction No. 1 nor instruction No. 2 was a correct declaration, and there was, therefore, no error in refusing them. The law is well settled that a party must ask an instruction correct in its entirety, and that it is not error to refuse an instruction which may contain a correct statement of the law if, when read as a whole, it does not correctly declare the law. *Western Union Telegraph Co.* v. *Ford,* 77 Ark. 531, 92 S. W. 528; *Bates* v. *Ford,* 110 Ark. 567, 162 S. W. 1097; *Gunter* v. *Williams,* 137 Ark. 530, 210 S. W. 136.

No error appears and the judgment must, therefore, be affirmed. It is so ordered.