### STATE v. LESLIE BROWN, JR.

(Filed 10 December, 1958.)

**1. Criminal Law § 99—**

On motion to nonsuit, the evidence must be considered in the light most favorable to the State, giving it the benefit of every reasonable intendment thereon, and every reasonable inference therefrom.

**2. Homicide § 4—**

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation.

**3. Homicide § 13—**

The intentional killing of a human being with a deadly weapon raises the presumption of malice, constituting the offense murder in the second degree, nothing else appearing, with the burden upon the State to establish premeditation and deliberation beyond a reasonable doubt in order to establish a case of murder in the first degree.

**4. Homicide § 20—**

The evidence in this case *is held* sufficient to be submitted to the jury in support of the charge of murder in the first degree.

**5. Criminal Law § 84: Homicide § 18— That witness had made like statements prior to trial is competent for purpose of corroboration.**

Defendant, in substantiation of his evidence on his plea of self-defense, introduced testimony of a witness as to a conversation between the witness and deceased on the day of the homicide in which deceased stated he was going to kill defendant or defendant was going to kill him. The witness further testified that he had repeated the substance of the conversation to others. *Held:* The exclusion of testimony of another witness that he had heard the first witness on the day of the crime relate his conversation with deceased, must be held for prejudicial error, it not being necessary to the competency of such corroborating evidence that the witness should have identified persons to whom he had made the statements.

PARKER, J., not sitting.

APPEAL by defendant from *Seawell, J.,* at February 1958 Criminal Term of BLADEN.

Criminal prosecution upon a bill of indictment charging defendant with murder in the first degree of one Joe Mitchell Smith.

Defendant pleaded not guilty.

Upon trial in Superior Court the State offered evidence from which the State contends the charge against the defendant is supported. On the other hand, defendant testified and offered testimony of others which he contends supports his plea of self-defense.

Since, as hereinafter stated, there must be a new trial for error shown, a recitation of the evidence set forth in detail in the record is deemed unnecessary.

The case was submitted to the jury under the charge of the court.

Verdict: Guilty of murder in the first degree with the recommendation for life imprisonment as charged in the bill of indictment.

Judgment: Confinement in the State Penitentiary "for the remainder of your natural life."

Defendant excepts thereto and appeals to the Supreme Court, and assigns error.

*Assistant Attorney General T. W. Bruton, for the State.*
*Clark, Clark & Grady for defendant, appellant.*

WINBORNE, C. J. This appeal presents in the main two questions:

1. Is the evidence offered upon the trial in Superior Court, when considered in the light most favorable to the State, giving to the State the benefit of every reasonable intendment thereon, and every reasonable inference therefrom, as is done in testing its probative value on motion to nonsuit, sufficient to take the case to the jury on the first degree murder charge in compliance with the statute G.S. 14-17?

In this connection it is appropriate to recur to applicable principles of law.

In *S. v. Hawkins,* 214 N.C. 326, 199 S.E. 284, the principles and authorities in support thereof are set forth as follows:

"Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. * * * * The intentional killing of a human being with a deadly weapon implies malice and, if nothing else appears, constitutes murder in the second degree * * * 'The additional elements of premeditation and deliberation, necessary to constitute murder in the first degree, are not presumed from a killing with a deadly weapon. They must be established beyond a reasonable doubt, and found by the jury, before a verdict of murder in the first degree can be rendered against the prisoner.' * * * 'Premeditation means "thought beforehand" for some length of time, however short.' * * * 'Deliberation means that the act is done

in cool state of blood. It does not mean brooding over it or reflecting upon it for a week, a day or an hour, or any other appreciable length of time, but it means an intention to kill, executed by the defendant in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose, and not under the influence of a violent passion, suddenly aroused by some lawful or just cause or legal provocation.' * * * 'In determining the question of premeditation and deliberation it is proper for the jury to take into consideration the conduct of the defendant, before and after, as well as at the time of, the homicide, and all attending circumstances.' * * * ."

Subsequent decisions of this Court uniformly follow these principles.

And in the light of these principles applied to the evidence in case in hand, this Court is unable to say that in no view is there no evidence in support of the charge of murder in the first degree. Hence the case was properly submitted to the jury.

2. But as to the second question, do the exceptions taken in the course of the trial in Superior Court, and assigned as error, disclose error prejudicial to defendant, this Court holds that the answer is "Yes", specifically in respect to ruling to which exception No. 3 relates.

This arose in this manner: After testifying as to threats made to him on morning of May 8, 1957, by Joe Mitchell Smith, defendant recalled the witness Neimiah Mitchell, who had testified for the State to the effect that Joe Mitchell Smith appeared to be "a little mad or angry" that morning when he, Smith, took him, Mitchell, his wife and daughter to the farm of "Mr. Joe Lennon" to pull tobacco plants, and that he talked with Smith that morning. And upon such recall Neimiah Mitchell testified: "Mr. Smith come by about 7:30 A.M. on May 8th to get me, my wife and my daughter; I talked with him before the others got to the pickup. Mr. Smith told me he had had some words with my buddy. I asked him who was my buddy; he said Leslie Junior Brown. I asked him what did he do, and he said plowing the road up, and Mr. Smith said he was going to kill Leslie Junior Brown or Leslie was going to kill him; he was going back to get his rifle * * * I am not related to the defendant. I have no interest in this case." And by cross-examination the State undertook to impeach him, and he concluded by saying "What I testified to, I talked about around home."

Then Mary Anna Mitchell, wife of the witness Neimiah Mitchell, who also had testified as witness for the State, was recalled by defendant. She testified: "On the morning of May 8, I got into the cab of Mr. Mitchell Smith's pickup. I did not see anything in the cab of the

pickup. Later I had a conversation with my husband, Neimiah Mitchell, about what had transpired between he and Mr. Mitchell Smith."

Then the case on appeal shows that the following took place:

"Q. What was that conversation? State objects.

"Off. This is purely for corroboration.

"J. No sir, he said he couldn't recall who he had talked it over with.

"Answer put in record as follows: 'He told me that Mr. Mitchell and Junior had some words, and he told me that Mr. Mitchell told him that he was coming back when he leave from carrying us down there and get his rifle and he was going to kill Junior or Junior was going to kill him, and that's all I know.'

"We had that conversation at our house when we came back from pulling the plants."

"J. My ruling is the same. This constitutes Exception No. 3."

In this connection it is competent to corroborate a witness by showing that he has previously made the same statement as to the transaction as that given by him in his testimony, and that it is not necessary to ask the witness to whom such former statement, offered in corroboration, was made. *Burnett v. R.R.*, 120 N.C. 517, 26 S.E. 819, cited in numerous later cases. See Shepherd's Annotations. See also *Gregg v. Mallett*, 111 N.C. 74, 15 S.E. 936; *S. v. McKinney*, 111 N.C. 683, 16 S.E. 235; *S. v. Maultsby*, 130 N.C. 664, 41 S.E. 97.

In the *McKinney case, supra,* in opinion by *Clark, J.,* the Court had this to say: "The second exception is that the State was allowed to corroborate two of its witnesses by showing that soon after the homicide they made the same statement of the occurrence as they had testified to in the trial. This has often been held competent," citing cases.

In the light of these principles, applied to factual situation in hand, it was competent for purpose of bolstering his credibility to show that witness Neimiah Mitchell had made the same statement as he had testified to in the trial. His statement was corroborative of testimony of defendant. Hence the credibility of Neimiah Mitchell was material and pertinent to the case before the jury.

Therefore the exclusion of the proffered testimony of Mary Anna Mitchell was error prejudicial to defendant, for which there must be a new trial.

Other assignments of error need not be treated here, since they may not recur on another trial.

New Trial.

PARKER, J., not sitting.