An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1413
NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

STATE OF NORTH CAROLINA

v.

QUINTON O'BRIAN SURRATT

Cleveland County
Nos. 09 CRS 57002-03, 57100-01

Appeal by Defendant from Judgments entered 30 May 2013 by Judge Nathaniel J. Poovey in Cleveland County Superior Court. Heard in the Court of Appeals 23 April 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Jill Ledford Cheek, for the State.*

> *Cheshire Parker Schneider & Bryan, PLLC, by John Keating Wiles, for Defendant.*

STEPHENS, Judge.

*Evidence and Procedural History*

This case arises from a robbery committed on 15 December 2009. At trial, the State's evidence tended to show the following:

Lance Smith, Thomas Herring III, Orlando Littlejohn, and Appollonia Eley were at Christopher Parrott's house in Shelby,

North Carolina on 15 December 2009. Christopher Parrott was in his bedroom playing video games. Parrott worked as a rapper and an employee in his mother's restaurant. He also sold marijuana out of his home, a fact which was commonly known in the community.

Around 10:00 a.m. on 15 December 2009, Trumaine Jefferies, Jonavan Hopper, and Defendant Quinton O'Brian Surratt (together, "the trio") went to Parrott's house under the guise of purchasing marijuana. They gained entry into the house and went to Parrott's bedroom. Once there, the trio pulled out guns and took marijuana, cash, clothes, two PlayStation 3 video game consoles, a television, and some shoes. As the trio was leaving, Jefferies held Parrott and the others in the home at gunpoint while Defendant and Hopper put the stolen items in the back of their vehicle.

While Defendant and Hopper were putting the items in the vehicle, Parrott lunged at Jefferies to recover the gun. Parrott was able to gain possession of the weapon, and Hopper and Defendant opened fire from the automobile. Parrott was injured during the shooting.

Jefferies got up and went to the automobile with Defendant and Hopper. Parrott was placed in Eley's Volvo and taken to the hospital. Parrott died later that day.

Immediately after the robbery, the trio contacted Keon Ross and Arthiando Phillips and rode with them to Greenville, South Carolina. There they lived in a hotel until 17 December 2009, when they were apprehended. After their arrest, law enforcement officers found marijuana, handguns, PlayStation 3 consoles, and clothing inside their room. Herring, Smith, and Littlejohn identified Defendant from photographic lineups.

Following completion of the State's evidence, Defendant presented contradictory evidence. According to his testimony and the testimony of Jeffries, the events on 15 December 2009 occurred as follows:

The trio went to Parrott's house to buy marijuana, not to rob anyone. Defendant was the only one of the trio left in the house when Hopper and Jefferies took the stolen items to put in the car. Parrott lunged at Defendant, which resulted in a scuffle. Parrott was on top of Defendant and grabbed a gun. When Parrott prepared to shoot, Jefferies and Hopper opened fire. After Parrott was hit, Defendant was helped up and left with Hopper and Jefferies.

Defendant testified that he did not steal anything and he did not shoot anyone. Defendant and Jefferies both testified that, after leaving Parrott's house, the trio promptly left Shelby and went to Greenville, South Carolina where they were apprehended. On cross-examination, Defendant admitted stating in a recorded conversation with Phillips that he did not want to talk over the phone about his warrants. Over Defendant's objection, the prosecutor asked the following question in connection with the recorded conversation: "If you're innocent, why does it matter if you're being recorded?" Defendant responded that he "didn't want to make it worse than it already was."

Following closing arguments, Defendant requested a jury instruction on "self-defense or . . . defense of others." The trial court denied that request on grounds that the evidence would not "support a self[-]defense instruction under any scenario." The jury returned verdicts of guilty of felony breaking and entering, felony conspiracy to commit robbery with a dangerous weapon, robbery with a dangerous weapon, and first-degree murder under the felony murder rule based on the underlying felony of armed robbery. The court imposed a life sentence without parole for the murder conviction and 8 to 10

months imprisonment for felonious breaking and entering. The court then arrested judgment with respect to Defendant's convictions for robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. Defendant gave notice of appeal in open court.

*Discussion*

On appeal, Defendant argues that the trial court erred when it (1) denied his request for an instruction on defense of another and (2) overruled Defendant's objection to the prosecutor's question regarding the recorded conversation. We find no prejudicial error.

*I. Jury Instruction on Defense of Another*

Defendant argues that the trial court improperly denied his request for a jury instruction on defense of another as applied to the charge of felony murder because "the robbery ended when the [trio] left the bedroom, and . . . Parrot initiated a new encounter when . . . he followed the [trio] and proceeded to become the aggressor by lunging for the gun, gaining possession of the gun, and popping up to shoot," creating a situation where perfect defense of another would be applicable to excuse the killing. Without that error, Defendant contends, the jury "might have acquitted [him] of the murder charge and convicted him only

of the charges of felonious breaking or entering, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon." We disagree.

"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court. An instruction about a material matter must be based on sufficient evidence." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

> First-degree murder by reason of felony murder is committed when a victim is killed during the perpetration or attempted perpetration of certain enumerated felonies or a felony committed or attempted with the use of a deadly weapon. In felony murder, the killing may, but need not, be intentional. There must, however, be an unbroken chain of events leading from the attempted felony to the act causing death so that the homicide is part of a series of events forming one continuous transaction.

*State v. Gibbs*, 335 N.C. 1, 51–52, 436 S.E.2d 321, 350 (1993) (citation and internal quotation marks omitted), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1993).

As a general rule, a defendant in North Carolina may be excused for a murder under a theory of perfect self-defense if, at the time of the killing:

> (1) it appeared to [the] defendant and he believed it to be necessary to kill the deceased in order to save himself from death

or great bodily harm; and

(2) [the] defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) [the] defendant was not the aggressor in bringing on the affray, *i.e.,* he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) [the] defendant did not use excessive force, *i.e.,* did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

Imperfect self-defense arises when the defendant reasonably believed it was necessary to kill the deceased in order to save himself from death or great bodily harm, but [the] defendant, although without murderous intent, was the aggressor or used excessive force. One who exercised the right of imperfect self-defense in killing an adversary remains guilty of at least voluntary manslaughter.

*State v. Martin*, 131 N.C. App. 38, 44-45, 506 S.E.2d 260, 265 (citations and internal quotation marks omitted; italics added), *disc. review denied*, 349 N.C. 532, 526 S.E.2d 475 (1998). In addition, "one may lawfully do in another's defense only what the other might lawfully do in his own defense." *State v.*

*McLawhorn*, 270 N.C. 622, 629, 155 S.E.2d 198, 204 (1967). Therefore,

> [i]n order to establish either perfect or imperfect defense *of another*, the evidence must show that it appeared to the defendant and he believed it necessary to kill the deceased in order to save another from death or great bodily harm. It must also appear that the defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness. The relevant distinction between the two defenses is that imperfect defense of another arises when the first two elements are present but either the third or the forth element is absent.

*State v. Perry*, 338 N.C. 457, 466-67, 450 S.E.2d 471, 476-77 (1994) (citations omitted; emphasis modified).

When a defendant is charged with first-degree murder under a theory of felony murder, however,

> neither perfect nor imperfect self-defense is available [as an excuse]. In felony murder cases, self-defense is available only to the extent that perfect self-defense applies *to the relevant underlying felonies*. Imperfect self-defense is not available as a defense to felonies underlying a felony murder charge.

*Martin*, 131 N.C. App. at 45, 506 S.E.2d at 265 (citation omitted; emphasis added).

> [T]he purpose of the felony murder rule is to deter even accidental killings from occurring during the commission of a

> dangerous felony. To allow self-defense, perfect or imperfect, to apply to felony murder would defeat that purpose, and if a person is killed during the perpetration or attempted perpetration of a felony, then the defendant is guilty of first-degree felony murder — not second-degree murder or manslaughter. *It is only certain applicable underlying felonies* that can be subject to an instruction on perfect self-defense.

*State v. Richardson*, 341 N.C. 658, 668–69, 462 S.E.2d 492, 499 (1995) (emphasis added).

In this case, Defendant was convicted of first-degree murder under the felony murder rule based on armed robbery as the underlying felony. Defendant was not convicted of first-degree murder on other grounds (*i.e.*, premeditation and deliberation). Contrary to Defendant's contention, the record contains no evidence tending to show that the chain of events involving the robbery had come to an end by the time of the shooting. On appeal, Defendant argues that the trial court erred by not instructing on defense of another because the jury "might have acquitted [Defendant] of the *murder charge* and convicted him only of the charges of felonious breaking and entering, *robbery with a dangerous weapon*, and conspiracy to commit robbery with a dangerous weapon." (Emphasis added). He does not argue that the theory of perfect defense of another somehow applies to negate the crime of *armed robbery* or, in line with

his testimony at trial, that he did not *participate in the crime* and, thus, that the trial court erred by instructing the jury on armed robbery. Defendant only contends that the trial court erred in failing to instruct on defense of another because the jury might have changed its verdict that he was guilty of murder if it knew that "the law might recognize a defense to the killing."[1]

As our appellate courts have made abundantly clear, the doctrine of self-defense does not excuse a charge of first-degree murder under the felony murder theory. *Richardson*, 341 N.C. at 668–69, 462 S.E.2d at 499; *Martin*, 131 N.C. App. at 45, 506 S.E.2d at 265. Because "one may lawfully do in another's defense only what the other might lawfully do in his own defense," *McLawhorn*, 270 N.C. at 629, 155 S.E.2d at 204, we must also hold that an instruction on perfect *defense of another* is similarly unavailable to defend against first-degree murder under the felony murder theory. *See McLawhorn*, 270 N.C. at 629, 155 S.E.2d at 203–04; *see also Martin*, 131 N.C. App. at 44–45,

---

[1] As discussed above, the law will not excuse a killing when committed in the course of a felony even if the defendant has some colorable argument that self-defense was appropriate as it relates to the murder. The law will only excuse such a killing if perfect self-defense or perfect defense of another somehow applies to negate the underlying felony — here, the armed robbery.

506 S.E.2d at 265. Therefore, an instruction on perfect defense of another is only applicable to the charge of felony murder where it might negate the relevant *underlying felony*. *See McLawhorn*, 270 N.C. at 629, 155 S.E.2d at 203–04; *see also Martin*, 131 N.C. App. at 44–45, 506 S.E.2d at 265. Here, that felony is armed robbery. Since Defendant does not argue that perfect defense of another somehow works to negate his conviction of armed robbery, we conclude that the trial court did not err in declining to instruct the jury on defense of another.[2] Accordingly, Defendant's argument is overruled.

*II. Self-Incrimination*

Defendant next argues that the trial court committed prejudicial error in violation of his constitutional privilege against self-incrimination and his due process rights by

---

[2] Even if Defendant had argued that a theory of self-defense would work to excuse the underlying felony of armed robbery, recent case law from this Court indicates that he would have been unsuccessful. *See State v. Evans*, __ N.C. App. __, __, 747 S.E.2d 151, 155 (2013) (holding that the trial court did not err in omitting an instruction on self-defense when the defendant was charged with first-degree murder on the basis of the felony murder rule where the underlying felonies were attempted robberies with a dangerous weapon) (citing *State v. Jacobs*, 363 N.C. 815, 822, 689 S.E.2d 859, 864 (2010) ("As to felony murder, self-defense is available only to the extent that it relates to applicable underlying felonies. *We fail to see how* [*the*] *defendant could plead self-defense to a robbery the jury found he had attempted to commit himself*.") (emphasis added)).

overruling his objection to the prosecutor's question on cross-examination "about why it mattered that [Defendant's] phone call from the jail was being recorded if he [were] innocent." We disagree.

> It is well-settled that *de novo* review is ordinarily appropriate in cases where constitutional rights are implicated. A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.

*State v. Tate*, 187 N.C. App. 593, 599, 653 S.E.2d 892, 897 (2007) (citations and internal quotation marks omitted).

At trial, the following relevant colloquy occurred between Defendant and the prosecutor regarding the jailhouse phone call:

> Q. Where in that phone call do you tell Arthiando Phillips that you didn't have anything to do with this?
>
> A. I didn't tell him.
>
> Q. In fact —
>
> A. Because he already knew it.
>
> Q. He already knew?
>
> A. Yes.
>
> Q. How did he know?

A. Because if you knew me, you know I wouldn't do nothing like that.

Q. If who knew you?

A. They knew I wouldn't do nothing like that.

Q. Well, let's talk about that conversation between you and Arthiando. You state[d] to him everybody in the room was asleep. The next thing I knew the door was kicked in, and we got guns in our face; is that right?

A. Yes, ma'am.

Q. How did they know y'all was there is what he responds; do you remember that?

A. Yes, ma'am.

Q. You said, man, I don't even know. They had . . . some other detectives with them; is that correct?

A. Yes, ma'am.

Q. So nowhere in that conversation that we talked about so far do you indicate at all that you had nothing to do with this, and you didn't want the two of them with you; is that right?

A. Yes, ma'am.

Q. Then you go on to talk about what warrants you have; is that right?

A. Yes, ma'am.

Q. You state I got about five. I don't want to talk about it over the phone. Why didn't you want to talk about it over the phone?

A. 'Cause for reason like this.

Q. For reasons like what?

A. Being recorded.

Q. If you're innocent, why does it matter if you're being recorded?

\* \* \*

[Counsel for Defense]: Objection.

The Court: Overruled.

[Counsel for Defense]: Violation of fifth amendment privilege, Your Honor.

The Court: . . . The objection is overruled. . . .

\* \* \*

A. Can you repeat [the question] again?

Q. Yes. If you're innocent, why didn't you want to talk about it over the phone?

A. 'Cause I didn't want to make it worse than it already was.

Q. You didn't what; I'm sorry?

A. I didn't want to make the situation worse than it already was.

Defendant argues that the prosecutor's questioning "stepped over the line" in violation of "the privilege against self-incrimination . . . when she asked why [Defendant] decided to be silent if he were innocent." Defendant further asserts that

"[he] affirmatively exercised his right to silence in the face of the State's accusations when he said that he did not want to talk about the warrants against him," likening the question to "asking why an arrested defendant might decline to speak to law enforcement if he were innocent." Assuming without deciding that the prosecutor's question could have constituted a violation of Defendant's right against self-incrimination, the State has demonstrated that such error was harmless beyond a reasonable doubt.

Here, the evidence presented at trial overwhelmingly established that Defendant participated in the underlying felonies of breaking and entering, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. Multiple eyewitnesses described Defendant as a participant in the robbery, and testimony by law enforcement officers placed Defendant in the Greenville hotel room with the stolen goods and the other members of the trio, who Defendant admits were involved in the robbery. The implication from the prosecutor's question that Defendant might be more likely to be guilty because he was not inclined to talk about his warrants would not have substantially affected the jury's weighing of the evidence. As a result, any violation resulting from the

prosecutor's question was harmless beyond a reasonable doubt. Accordingly, Defendant's argument is overruled.

NO PREJUDICIAL ERROR.

Judges GEER and ERVIN concur.

Report per Rule 30(e).