STATE OF NORTH CAROLINA v. JESSE DWIGHT MIXION

No. 9121SC1043

(Filed 18 May 1993)

**1. Homicide § 313 (NCI4th) — second degree murder — evidence of self-defense — sufficient evidence of malice**

The State presented sufficient evidence of malice for submission to the jury of a charge against defendant for the second degree murder of his estranged wife, although defendant presented evidence that he acted in imperfect self-defense, where the State's evidence tended to show that defendant intentionally shot his wife and his sister-in-law with a .25 caliber pistol; defendant had threatened his wife on prior occasions,

STATE v. MIXION

[110 N.C. App. 138 (1993)]

damaged her property, and said that he would kill her before he let her live in the family home; and on the night in question, neither the wife nor the sister-in-law said or did anything threatening toward defendant immediately prior to the shooting. Discrepancies between the State's evidence of malice and defendant's evidence of imperfect self-defense were for the jury to resolve.

**Am Jur 2d, Homicide §§ 50, 51, 139-169, 274.**

2. **Evidence and Witnesses § 267 (NCI4th)— psychiatric testimony—opinion that victim not homicidal—admission as harmless error**

A psychiatrist's opinion formed during an interview of a murder victim several months before the murder. that the victim was not homicidal was inadmissible under Rule of Evidence 405(a) to show that the victim was not homicidal on the night in question and that defendant could not have been acting in self-defense when he shot the victim. However, the admission of this testimony was not prejudicial error where the psychiatrist testified on cross-examination that the interview lasted only thirty minutes and that she was not familiar with the victim's medical state on the date of the killing; the jury knew that the victim was armed with a pistol when she entered defendant's house the night of the killing and that she could have shot defendant if that was her intention rather than merely hitting him with her pistol; and a different result would not have been reached if the psychiatrist's opinion had been excluded.

**Am Jur 2d, Expert and Opinion Evidence §§ 190, 193.**

3. **Evidence and Witnesses § 339 (NCI4th)— prior threats, assaults, damage to property—admissibility to show malice and intent**

In a prosecution of defendant for the murder of his estranged wife, nonhearsay testimony that defendant had previously threatened and assaulted his wife and damaged her property and that she had taken legal action against him was admissible to prove defendant's malice and intent. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Homicide §§ 280, 282, 283, 359, 360.**

4. **Evidence and Witnesses § 876 (NCI4th)— threats and harassment — hearsay statements of murder victim — state of mind exception**

Hearsay testimony that a murder victim had told others that defendant had cut off her heat and electricity, threatened to kill her, harassed her, assaulted her several times, damaged her furniture, and tampered with her house, that he was crazy, and that the police had been unable to catch him for violating a restraining order was admissible under the state of mind exception to the hearsay rule set forth in Rule of Evidence 803(3).

**Am Jur 2d, Evidence §§ 496, 497, 650.**

5. **Homicide § 629 (NCI4th)— self-defense in home — amount of force — instructions**

The trial court in a prosecution for second degree murder and felonious assault did not err in failing to give defendant's requested instruction on defendant's right to increase the amount of force used in self-defense in his own home where defendant actually requested an instruction on defense of habitation; defendant did not shoot the victims to prevent entry into his home and was thus not entitled to an instruction on defense of habitation; and the court properly instructed the jury that if defendant was not the aggressor and was in his own home, he could stand his ground and repel force with force regardless of the character of the assault being made upon him, but that defendant would not be excused if he used excessive force.

**Am Jur 2d, Homicide §§ 174 et seq., 496.**

**Accused's right, in homicide case, to have jury instructed as to both unintentional shooting and self-defense. 15 ALR4th 983.**

6. **Criminal Law § 1184 (NCI4th)— aggravating factor — prior convictions — insufficient record evidence**

The trial court's finding of the statutory aggravating factor of prior convictions was not supported by competent record evidence where the State filed a notice to defendant of intent to use defendant's record of prior convictions at trial, a computer printout of defendant's record of prior convictions was attached to the notice, the prosecutor cross-examined defendant at trial about several of the listed convictions, defendant

STATE v. MIXION

[110 N.C. App. 138 (1993)]

admitted he had been convicted of assaulting his wife in 1982, and the prosecutor referred to defendant's prior convictions at the sentencing hearing, but there was no evidence indicating whether the assault conviction was for a simple or an aggravated assault and thus whether the offense was punishable by imprisonment for more than 60 days, the prosecutor never offered the printout list of convictions as evidence, and defendant never stipulated to these convictions. N.C.G.S. § 15A-1340.4(e).

**Am Jur 2d, Homicide §§ 310-314.**

7. **Criminal Law § 1238 (NCI4th) — strong provocation — extenuating relationship — separate mitigating factors**

Although strong provocation and an extenuating relationship are listed in the same statutory subsection, N.C.G.S. § 15A-1340.4(a)(2)i, they are separate mitigating factors, and the trial court's finding of the strong provocation factor does not have the same effect as finding the factor of an extenuating relationship.

**Am Jur 2d, Homicide §§ 274, 290, 291, 575.**

8. **Criminal Law § 1245 (NCI4th) — mitigating factor — extenuating relationship — insufficient evidence to require finding**

Evidence of past difficulties and a stormy relationship between defendant and his estranged wife for which both were at fault did not require the trial court to find an extenuating relationship as a mitigating factor for defendant's second degree murder of his wife.

**Am Jur 2d, Homicide §§ 274, 290, 291, 575.**

9. **Criminal Law § 1216 (NCI4th) — mitigating factors — duress — strong provocation — failure to find duress not error**

Although evidence that a murder victim was armed with a pistol and initiated the confrontation with defendant would support a finding of duress as a mitigating factor for defendant's second degree murder of the victim, the trial court did not err in failing to find duress where this same evidence was the basis for the trial court's finding of strong provocation as a mitigating factor.

**Am Jur 2d, Homicide §§ 119, 274, 290, 291, 575.**

Judge COZORT dissenting.

STATE v. MIXION

[110 N.C. App. 138 (1993)]

Appeal by defendant from judgments and commitments entered 5 April 1991 by Judge W. Steven Allen in Forsyth County Superior Court. Heard in the Court of Appeals 13 January 1993.

*Attorney General Lacy H. Thornburg, by Associate Attorney General John G. Barnwell, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

LEWIS, Judge.

A Forsyth County Grand Jury indicted defendant for the murder of his wife Sylvia Mixion and the assault with a deadly weapon with intent to kill inflicting serious injury (hereinafter "the assault") upon his sister-in-law Toni Nelson. At trial the State pursued a second-degree murder conviction, and the jury found defendant guilty of second-degree murder and the assault. Judge Allen found aggravating and mitigating factors, and sentenced defendant to a total of 52 years imprisonment, 40 years for the murder and 12 years for the assault.

We begin with a recitation of the facts, including the discrepancies between the State's evidence and defendant's evidence. It is undisputed that Ms. Mixion and Ms. Nelson arrived at defendant's place of residence at about 10:30 p.m. on 5 July 1990. They entered the house and found defendant in the back bedroom. Ms. Mixion was angry with defendant, started to shout at him, and pulled out a pistol but never fired. The ensuing fight flowed to the front bedroom and then to the living room. At some point defendant picked up a gun. In the living room defendant fired two shots: one killed Ms. Mixion and the other injured Ms. Nelson.

Defendant's evidence tends to show that defendant may have acted in self-defense when he shot his wife and injured his sister-in-law. Several of defendant's friends were in the house that night when Ms. Mixion and Ms. Nelson arrived. They testified that Ms. Mixion stormed into the house and attacked defendant as he was sitting peacefully in his bedroom. Ms. Mixion repeatedly hit defendant with a pistol as the fight progressed to the front bedroom and the living room. Although one friend, Larry Wilson, was standing in the doorway to the living room when the shooting occurred, he testified that he could "not exactly" see the people in the room when the shot was fired, and that he "didn't know who had shot

who at that time." The other friends had left the house before the shots were fired.

Defendant himself testified that Ms. Mixion came into the bedroom, stuck her pistol in his face, cursed at him, and hit him with and without the pistol. According to defendant, they started fighting as he tried to leave the room. He picked up a gun. At one point Ms. Nelson jumped on top of him, hit him, and brought him to the floor. He alleges that when they got to the living room Ms. Mixion pushed him, raised her pistol, cocked it, pointed it at him and said "I am going to kill you." When Ms. Nelson said "shoot," defendant fired his gun twice.

The State's evidence, on the other hand, tends to show that defendant was not acting in self-defense. The State was permitted to introduce evidence of events which occurred prior to the night in question. This evidence indicated that defendant's wife and son had left him in October 1989. On a subsequent occasion defendant entered the family home, where his wife and son were living, and chopped up all of the furniture, and on another occasion he cut off their heat and electricity. In June 1990 he told his wife, and also his son, that he would kill his wife before he let her have the house. Defendant's son was permitted to testify that defendant had previously threatened his wife, fought with her, and cut her with a knife. Ms. Nelson testified that defendant had tried to run over his wife with his car in January 1990.

The State was also allowed to introduce the expert testimony of a psychiatrist, Dr. Nancy Gaby. Dr. Gaby testified that she had met with Ms. Mixion for 30 minutes on 26 February 1990. She testified that Ms. Mixion told her that defendant had been harassing and threatening her in "numerous" and "vicious" ways, and that she had obtained a restraining order. Dr. Gaby testified that Ms. Mixion was neither suicidal nor homicidal. Ms. Mixion's divorce attorney, John Schramm, testified that she told him defendant had previously assaulted her and damaged her property.

Toni Nelson testified that on 5 July 1990 she and Ms. Mixion went to defendant's house and found defendant in the back bedroom. Ms. Mixion started shouting, cursing, and hitting defendant and became "real irate." She pulled out a pistol, shook it at defendant, and then left the bedroom to go to the front bedroom. Ms. Nelson was still in the room with defendant when he produced a gun from under his mattress and followed Ms. Mixion. Ms. Nelson testified

that she saw Ms. Mixion underneath defendant in the front room, and that he was "pounding down" on her. Ms. Nelson hit defendant on the head with a cordless drill. Ms. Nelson testified that she and Ms. Mixion were standing in the living room when defendant came out of the front bedroom. Neither of them said anything to defendant before he shot his gun twice, once at Ms. Mixion and once at her. Ms. Mixion fell to the floor and Ms. Nelson ran outside. Ms. Mixion's pistol, a Derringer, was found in the open position, with two unfired rounds on the floor, about two to three feet from her head. A pistol in the open position cannot be fired.

On appeal, defendant claims the court should have granted his motion to dismiss, because the evidence of malice was insufficient and in fact showed that he acted in imperfect self-defense. Defendant argues the trial court erroneously allowed the State to introduce various types of evidence at trial. Defendant challenges the admission of the psychiatrist's expert testimony, evidence of prior wrongs and acts, and hearsay evidence of prior wrongs and acts. Defendant argues that the trial court should have given his requested jury instruction on his rights to self-defense in his own home. Finally, defendant challenges the trial court's finding of the aggravating factor of prior convictions, and its failure to find as a mitigating factor an extenuating relationship with his wife and that he acted under duress or threat thereby reducing his culpability.

I. Defendant's Motion to Dismiss

[1] Defendant first argues the trial court erred in denying his motion to dismiss at the close of all the evidence, because the evidence showed he acted in imperfect self-defense as a matter of law. He claims the evidence of malice was insufficient, and therefore he could only have been guilty of voluntary manslaughter and should not have been convicted of second degree murder.

On defendant's motion to dismiss in a criminal case, the evidence must be viewed in the light most favorable to the State, allowing the State the benefit of every reasonable inference. *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382 (1988). "Any contradictions or discrepancies in the evidence are for resolution by the jury." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984).

To establish second-degree murder, the State must produce evidence that defendant committed "the unlawful killing of a human being with malice, but without premeditation and deliberation."

*State v. Thomas*, 332 N.C. 544, 559, 423 S.E.2d 75, 83 (1992). The element of malice is rebuttably presumed when "an individual intentionally takes the life of another with a deadly weapon." *State v. Deans*, 71 N.C. App. 227, 232, 321 S.E.2d 579, 582 (1984), *disc. rev. denied*, 313 N.C. 332, 329 S.E.2d 386 (1985). The trial judge found as a matter of law that defendant's weapon, a .25 caliber Raven pistol, was a deadly weapon. The State's evidence also showed that defendant threatened his wife on prior occasions, damaged her property, and even said he would kill her before he let her live in the house. On the night in question, the State's evidence shows that neither Ms. Mixion nor Ms. Nelson said or did anything threatening towards defendant immediately prior to the shooting in the living room.

After reviewing the evidence in the light most favorable to the State, we find sufficient evidence of malice to go to the jury. It was for the jury to resolve the discrepancies between the State's evidence of malice and defendant's evidence of imperfect self-defense. The trial court properly denied defendant's motion to dismiss.

II. Expert Character Testimony

[2] Defendant argues the trial court erroneously admitted the expert testimony of psychiatrist Nancy Gaby. Dr. Gaby was permitted to read from her notes, taken during a February 1990 interview with Ms. Mixion, her conclusion that in her opinion Sylvia Mixion was not homicidal. Defendant claims this evidence was introduced to show that Ms. Mixion was not homicidal on the night in question and therefore defendant could not have been acting in self-defense. Thus, according to defendant, Dr. Gaby's testimony amounted to an improper expert opinion of defendant's guilt. *See State v. Kim*, 318 N.C. 614, 621, 350 S.E.2d 347, 351 (1986). Defendant argues this evidence was extremely prejudicial.

In North Carolina an expert may not express an opinion regarding the guilt or innocence of a defendant. *See State v. Keen*, 309 N.C. 158, 163, 305 S.E.2d 535, 538 (1983). According to Rule 405(a) of the North Carolina Rules of Evidence, "[e]xpert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior." N.C.G.S. § 8C-1, Rule 405(a) (1992).

The State argues the evidence was admissible under Rule 803 as a state of mind expression and as a statement for purposes of medical diagnosis and treatment. § 8C-1, Rule 803(3), -(4). However,

Rule 803 only relates to the admissibility of Dr. Gaby's hearsay statements of what Ms. Mixion told her during their interview. Although Dr. Gaby's notes indicate that Ms. Mixion did in fact state that she was not suicidal or homicidal, defendant is objecting to the admission of *Dr. Gaby's* conclusion that Ms. Mixion was not homicidal. Rule 803 does not assist the State regarding the admissibility of Dr. Gaby's own opinion, and the State has presented no argument addressing the admissibility of Dr. Gaby's opinion.

We must conclude the trial court erred, under Rule 405(a), in admitting Dr. Gaby's opinion that Ms. Mixion was not homicidal. However, defendant has not shown that this amounted to prejudicial error under N.C.G.S. § 15A-1443(a) (1988) (if not a constitutional error defendant has burden to show prejudice and that a different result would have been reached). On cross-examination, defendant's attorney established that Dr. Gaby's interview with Ms. Mixion lasted only 30 minutes, and it occurred several months before the night in question. Dr. Gaby admitted she was not familiar with the victim's medical state in July 1990, when the shooting occurred. Furthermore, we note that the jury had heard detailed testimony from several witnesses concerning the night in question as well as testimony regarding the past relationship between defendant and Ms. Mixion. The jury knew that Ms. Mixion was armed from the time she entered defendant's house that night, and that she could have shot defendant if that had been her intention, instead of merely hitting him with her pistol. In light of the other evidence presented, we do not believe a different result would have been reached if Dr. Gaby's testimony, based upon a brief encounter several months earlier, had been excluded. *See State v. Davis*, 106 N.C. App. 596, 604, 418 S.E.2d 263, 268 (1992), *disc. rev. denied*, 333 N.C. 347, 426 S.E.2d 710 (1993) (although error to allow unlimited expert testimony on post-traumatic stress disorder, error was not prejudicial in light of other strong and convincing evidence).

III.   Evidence of Prior Wrongs and Acts

A.   Character Evidence

[3]   Defendant contends the trial court erroneously allowed non-hearsay evidence of prior wrongs and acts in violation of Rules 404 and 403. This evidence consisted of the testimony of various people that defendant had previously threatened and assaulted Ms. Mixion and damaged her property, and that she had taken legal

action against him. Defendant claims this evidence was introduced to show his violent character and that he did not act in self-defense on 5 July 1990.

According to Rule 404, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." § 8C-1, Rule 404(b). However, defendant concedes in his brief that when one spouse is accused of killing the other, evidence of the accused's prior assaults and threats made during their marriage is admissible to prove malice and intent. *State v. Lynch*, 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990). The evidence was clearly admissible under this principle.

B. Hearsay Evidence

[4] Defendant also objects to hearsay evidence of alleged prior wrongs and acts. He objects to testimony that Ms. Mixion told others that he had cut off the heat and electricity, that he had threatened to kill her, that he had been harassing her, that he was crazy, that the police had not been able to catch him for violating the restraining order, that he had assaulted her several times in the past, that he had damaged her furniture, and that he had tampered with the house. Defendant also argues that even if the evidence was admissible under the state of mind exception to the hearsay rules, it was not relevant to the case.

Rule 803(3) sets forth the state of mind exception to the hearsay rules: "[a] statement of the declarant's then existing state of mind, emotion, sensation . . . but not including a statement of memory or belief to prove the fact remembered or believed . . . ." § 8C-1, Rule 803(3). Defendant claims the evidence did not show state of mind, because Ms. Mixion did not express her emotional state or feelings. She did not state that she was fearful of defendant, but merely related facts and events that had transpired.

It is true that in many of the cases addressing this hearsay exception, the evidence allowed indicates that the declarant had actually expressed fear of the defendant. *See State v. Meekins*, 326 N.C. 689, 694, 392 S.E.2d 346, 349 (1990) (testimony of niece that victim told her she was afraid of defendant admissible under Rule 803(3) ). However, we note that *State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66 (1990), is similar to this case. In that case the trial court allowed hearsay evidence that the victim had stated

defendant had previously beaten her and threatened her. The witnesses did not state that the victim had expressed any fear. The Supreme Court found no error, noting that the testimony was admissible under Rule 803(3), because "the scope of the conversation . . . related directly to [the victim's] existing state of mind and emotional condition." 326 N.C. at 313, 389 S.E.2d at 74. In *State v. Faucette*, 326 N.C. 676, 392 S.E.2d 71 (1990), the Supreme Court found that the victim's statements to her son that defendant had threatened her "revealed her then-existing fear of the defendant . . . ." *Id.* at 683, 392 S.E.2d at 74.

We find that the hearsay evidence of threats and harassment by the defendant related directly to Ms. Mixion's state of mind and was therefore admissible under Rule 803(3). We also find that her state of mind was relevant to the case. In *Cummings*, the Court stated that the victim's state of mind was "highly relevant as it relates directly to the status of her relationship with defendant . . ." 326 N.C. at 313, 389 S.E.2d at 74. Defendant's contention that the evidence did not bear sufficient indicia of reliability under the Sixth Amendment of the United States Constitution is entirely frivolous. The evidence falls squarely within one of the established hearsay exceptions.

IV. Jury Instructions

[5] Defendant argues he is entitled to a new trial because the trial judge did not charge the jury with his requested jury instruction on his right to increase the amount of force used in self-defense in his own home, and that he was not required to retreat in his own home. At trial, defendant actually requested an instruction on defense of habitation, which the judge refused since the two women had already entered the house at the time of the shooting. Although the judge did instruct that defendant had no duty to retreat in his own home, the judge did not instruct that defendant had the right to increase his force.

We find the trial court properly instructed the jury according to Pattern Instruction 308.10 as follows: "If the defendant was not the aggressor and he was in his own home . . . he could stand his ground and repel force with force regardless of the character of the assault being made upon him. However, the defendant would not be excused if he used excessive force . . . ." This instruction is in accordance with *State v. McCombs*, 297 N.C. 151, 253 S.E.2d 906 (1979), wherein the Court stated,

> the use of deadly force in defense of the habitation is justified only to *prevent* a forcible entry into the habitation . . . . Once the assailant has gained entry . . . the usual rules of self-defense replace the rules governing defense of habitation, with the exception that there is no duty to retreat . . . .

*Id.* at 156-57, 253 S.E.2d at 910. *See also State v. Marshall*, 105 N.C. App. 518, 523-24, 414 S.E.2d 95, 98, *disc. rev. denied*, 332 N.C. 150, 419 S.E.2d 576 (1992). Defendant did not shoot to prevent entry into his home. He was therefore not entitled to an instruction on defense of habitation. We note the trial judge properly instructed on self-defense and imperfect self-defense.

V.   Aggravating Factor: Prior Convictions

**[6]**  Defendant argues that the trial court's finding of the statutory aggravating factor of prior convictions is not supported by any competent record evidence. Defendant claims the alleged prior convictions were not proven by any acceptable method under the Fair Sentencing Act, N.C.G.S. § 15A-1340.4(e) (Cum. Supp. 1992), or by any other permissible method of proof.

The State relies on the fact that prior to trial and sentencing, it submitted a motion in which it referred to evidence of defendant's conviction for assaulting Ms. Mixion with a knife in 1985. With this motion the State filed a "Notice of Intent to Use Record of Prior Convictions," attaching a list of convictions "obtained from official records." The State points out that the trial court heard arguments on the pre-trial motions, and that at trial the prosecutor cross-examined defendant about several of the listed convictions. Thus, when the prosecutor referred to a prior conviction at the sentencing hearing, he was referring to competent evidence of record. The State therefore contends it met its burden of proving the prior convictions.

The State must prove by a preponderance of the evidence the existence of aggravating factors. § 15A-1340.4(a), -(b). Prior convictions may be proved "by stipulation of the parties or by the original or a certified copy of the court record of the prior conviction." § 15A-1340.4(e). According to defendant, the State never introduced any court record of defendant's convictions, and the parties never stipulated to them. Defendant contends the State's only evidence consisted of the prosecutor's unsworn statement that defendant had some prior convictions.

STATE v. MIXION

[110 N.C. App. 138 (1993)]

The Supreme Court has stated that "the enumerated methods of proof of N.C. Gen. Stat. § 15A-1340.4(e) are permissive rather than mandatory." *State v. Graham,* 309 N.C. 587, 593, 308 S.E.2d 311, 316 (1983). In *Graham,* a deputy had advised the court of defendant's record from his own personal knowledge, and, more significantly, the defendant had admitted the prior convictions. *Id.* In *State v. Williams,* 92 N.C. App. 752, 376 S.E.2d 21, *disc. rev. denied,* 324 N.C. 251, 377 S.E.2d 762 (1989), the Court stated that "[a] prosecutor's mere unsworn assertion that an aggravating factor exists is insufficient proof for the trial court to find it." 92 N.C. App. at 753, 376 S.E.2d at 22. In that case, although the prosecutor was reading from official records, he did not offer them into evidence and defendant did not stipulate to them. For these reasons this Court remanded the matter for a new sentencing hearing, at which the Court noted the prior convictions would most likely be properly established. *Id.* at 753-54, 376 S.E.2d at 22.

In the case at hand, defendant did admit that he had been convicted of assaulting Ms. Mixion in 1982. However, there was no evidence indicating whether this conviction was for a simple assault or some form of aggravated assault. To be admissible, the prior conviction must have been for an offense punishable by more than 60 days imprisonment. § 15A-1340.4(a)(1)o. A simple assault is punishable by a fine or imprisonment for "not more than 30 days." N.C.G.S. § 14-33(a) (Cum. Supp. 1992). Without further information, defendant's admission that he was convicted of an assault cannot support a finding of the aggravating factor of a prior conviction.

We find there was insufficient evidence of defendant's prior convictions. The prior convictions were not proven by any acceptable methods, statutory or otherwise. The list of convictions submitted with the State's "Notice of Intent to Use Record of Prior Convictions" is a computer printout apparently obtained from the Winston-Salem police department. Although the prosecutor referred to the list during his cross-examination of defendant at trial, he never offered the list as evidence, and defendant never stipulated to it. We must remand for a new sentencing hearing, at which the State will have the opportunity to prove defendant's convictions by appropriate methods.

STATE v. MIXION

[110 N.C. App. 138 (1993)]

VI. Mitigating Factors: Extenuating Relationship; Duress or Threat

Finally, defendant contends the trial court erred in failing to find the statutory mitigating sentencing factors of an extenuating relationship between defendant and the victim, § 15A-1340.4(a)(2)i, and that defendant was acting under duress or threat which reduced his culpability. § 15A-1340.4(a)(2)b. A trial judge's failure to consider a statutory mitigating sentencing factor must be reversed on appeal if that factor is supported by uncontradicted, substantial, and credible evidence. *State v. Jones*, 309 N.C. 214, 218-20, 306 S.E.2d 451, 454-56 (1983). In order to find error in a judge's failure to find a mitigating factor, "the evidence must show conclusively that this mitigating factor exists, [and that] no other reasonable inferences can be drawn from the evidence." *State v. Canty*, 321 N.C. 520, 524, 364 S.E.2d 410, 413 (1988).

Section 15A-1340.4(a)(2) includes the following two mitigating factors:

b. The defendant committed the offense under duress, coercion, threat, or compulsion which was insufficient to constitute a defense but significantly reduced his culpability . . . .

i. The defendant acted under strong provocation, or the relationship between the defendant and the victim was otherwise extenuating.

A. Extenuating Relationship

An extenuating relationship should be found if circumstances show that part of the fault for a crime can be "morally shifted" from defendant to the victim. *State v. Martin*, 68 N.C. App. 272, 276, 314 S.E.2d 805, 807 (1984). Defendant claims his relationship with Ms. Mixion was "mutually stormy and difficult." Their son testified that neither defendant nor his mother were free from fault. Defendant also points to uncontradicted evidence that Ms. Mixion apparently shot a gun at defendant during their marriage, falsely accused defendant of having venereal disease, and threatened to shoot defendant in January and July 1990. Also, on the night in question Ms. Mixion was the initial aggressor. Thus, defendant claims at least part of the moral fault should be shifted to Ms. Mixion.

STATE v. MIXION

[110 N.C. App. 138 (1993)]

**[7]**   The State responds that the court did in fact find this mitigating factor when it stated that "[t]he Court finds as a mitigating factor that the defendant acted under strong provocation." Since strong provocation is a factor listed in the same statutory subsection as an alternative to an extenuating relationship, the State essentially argues it has the same effect as finding the factor of an extenuating relationship.

We must reject the State's argument that it is unnecessary to consider the existence of an extenuating relationship in addition to strong provocation. In *State v. Crandall*, 83 N.C. App. 37, 348 S.E.2d 826 (1986), *disc. rev. denied*, 319 N.C. 106, 353 S.E.2d 115 (1987), this Court stated that proof of both types of conduct set forth in the alternative in a subsection of statutory sentencing factors would support the finding of two separate mitigating factors "so as to reflect the defendant's lesser culpability." 83 N.C. App. at 40-1, 348 S.E.2d at 829. *See State v. Canty*, 321 N.C. 520, 364 S.E.2d 410 (1988) (Court found extenuating relationship and also discussed existence of strong provocation).

**[8]**   Thus, we must determine if the defendant has shown uncontradicted, substantial evidence of an extenuating relationship. Past difficulties in a marital relationship are not sufficient to support a finding of an extenuating relationship. *State v. Hudson*, 331 N.C. 122, 158, 415 S.E.2d 732, 752 (1992), *cert. denied*, 113 S. Ct. 983, 122 L. Ed. 2d 136 (1993). In *State v. Bullard*, 79 N.C. App. 440, 339 S.E.2d 664 (1986), the Court stated that although the defendant and victim had been arguing over an extended period of time, this evidence did not compel a finding that they had an extenuating relationship, because this evidence did not "necessarily lessen the seriousness of the crime committed." *Id.* at 443, 339 S.E.2d at 665-66 (*quoting State v. Michael*, 311 N.C. 214, 220, 316 S.E.2d 276, 280 (1984)).

In light of these principles, we cannot conclusively determine that this mitigating factor exists. The trial court could have considered the evidence and properly concluded that this factor was not supported by uncontradicted and substantial evidence.

B.   Duress or Threat

**[9]**   Defendant argues that since all of the evidence shows that Ms. Mixion initiated the fight and used "gross physical force" on defendant, the trial court should have found the defendant commit-

ted the crime under duress or threat. We note that even the State's evidence showed that the victim was armed and assaulted defendant with a pistol immediately prior to the shooting.

In *State v. Canty*, 321 N.C. 520, 364 S.E.2d 410 (1988), evidence that the victim had stabbed defendant 48 hours before defendant killed the victim was not sufficient to establish that defendant acted under duress. *Id.* at 524, 364 S.E.2d at 413-14. The Court noted that at the time of the shooting the victim did not display a weapon and did not initiate the confrontation. *Id.* at 524, 364 S.E.2d at 414. *See also Bullard*, 79 N.C. App. at 442-43, 339 S.E.2d at 665 (no duress where victim not armed and did not initiate confrontation).

Although the evidence in the case at hand would probably support a finding of duress since the victim was armed and had initiated the confrontation, we are constrained by the fact that the same evidence may not support more than one mitigating factor. *Crandall*, 83 N.C. App. at 41, 348 S.E.2d at 829. This evidence appears to be the basis for the trial judge's finding of strong provocation. The judge summarily stated the finding of strong provocation in response to defense attorney's plea for that factor because "[defendant] was in his home where, regardless of who it is, entered with a deadly weapon and an assault ensues . . . ," and because "of the method and manner of the attack upon [the defendant]." Since the same evidence may not support a finding of strong provocation and duress, we find no error in the judge's failure to find duress.

We must remand this case for a new sentencing hearing for proper documentation of defendant's prior convictions.

In the trial, no error.

Remanded for new sentencing.

Judge WELLS concurs.

Judge COZORT concurs in part and dissents in part.

Judge COZORT dissenting.

I concur with all of the majority opinion except that portion which concludes that the matter must be remanded for resentenc-

ing. I find the trial court's finding of the aggravating factor of prior conviction is supported by evidence properly before the trial court, and I vote no error.

At the beginning of the trial, on 1 April 1991, the State filed with the court a notice to the defendant that the State intended to use defendant's record of prior convictions during cross-examination if the defendant took the stand, and in its case in chief if any prior conviction involved Sylvia Mixion. Attached to the notice was a printout of defendant's record. The printout showed that defendant was convicted on 21 January 1986 of assault with a deadly weapon, a knife, in violation of N.C. Gen. Stat. § 14-33. N.C. Gen. Stat. § 14-33(b)(1) (Cum. Supp. 1992) defines that offense as a misdemeanor punishable by imprisonment for not more than two years. The printout also revealed that defendant was convicted on 24 August 1982 of assault on a female, in violation of N.C. Gen. Stat. § 14-33(b)(2). A conviction under that section also subjects the defendant to imprisonment for not more than two years. As the majority points out, the defendant admitted the 1982 conviction, which, as a matter of law, satisfies the "more than 60 days' confinement" requirement of N.C. Gen. Stat. § 15A-1340.4(1)o. (Cum. Supp. 1992).

I also observe that the defendant made no objection when the State offered and argued the prior convictions at the sentencing hearing. The State's attorney stated: "The State, I believe, may have tendered a copy of the record. I believe it's been recited in evidence for the court." The State's attorney then made specific reference to the assault with a deadly weapon and the assault on a female, as well as a trespass conviction. Defendant should not now be permitted to argue that it is unclear whether the assault was simple or aggravated. *See State v. Quick*, 106 N.C. App. 548, 555-61, 418 S.E.2d 291, 296-99 (1992).

It would be a waste of our already overburdened judicial resources to remand this case for a resentencing hearing when all that would be produced is exactly the same information which was properly before the trial court two years ago.

I respectfully dissent.