An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1366
NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

    v.

MARLON CURTIS MCKENZIE
    Defendant.

Cumberland County
No. 09 CRS 058449

Appeal by Defendant from a judgment entered on or about 21 November 2012 by Judge Claire V. Hill in Cumberland County Superior Court. Heard in the Court of Appeals on 10 April 2014.

> *Attorney General Roy A. Cooper, III, by Assistant Attorney General Brandon L. Truman, for the State.*
>
> *William D. Spence, for Defendant-appellant.*

DILLON, Judge.

Marlon Curtis McKenzie ("Defendant") appeals from a conviction for second-degree murder. For the following reasons, we find no error in Defendant's trial.

## I. Background

On 26 July 2010, Defendant was indicted for one count of first-degree murder. Defendant was tried at the 13 November 2012 Criminal Session of Cumberland County Superior Court. The

State's evidence tended to show that in the early morning hours of 14 June 2009, Eric Edmonds, Nicholas Hicks, Shonta Parson, Defendant, and Defendant's brother, Lestroy Lyte, were drinking beer and smoking marijuana in a shed located in the back of Defendant's mother's house in Fayetteville. Defendant, Mr. Edmonds, and Mr. Hicks lived in the same neighborhood.

Around 2 a.m., Mr. Edmonds, Mr. Hicks, and Ms. Parson decided to leave the shed and return to Mr. Edmonds' residence to cook some food. Upon arriving at his house, Mr. Edmonds discovered that his house key was missing so he returned to the shed and got in a non-physical confrontation with Defendant about the missing key. Mr. Edmonds told Defendant that he "better find" his keys, and threatened to hurt him physically. Mr. Edmonds then angrily threw a bottle on the ground and broke it. Mr. Edmonds, Mr. Hicks, and Mr. Lyte then walked back to Mr. Edmonds' house to look for the key, taking Defendant's key ring with him by accident. Defendant and Ms. Parson then went inside Defendant's house.

A short time later, Ms. Parsons received a call on her speaker phone from Mr. Lyte stating that Mr. Edmonds had found his house key on Defendant's key ring. Defendant heard this and then stated, "[h]e found out. He found out. I'm gonna shoot

him.  I'm gonna shoot him."  He then took a handgun out of his dresser and placed it underneath his shirt.  Defendant and Ms. Parson then drove to Mr. Edmonds' residence, arriving approximately 10 to 15 minutes after the initial confrontation between Defendant and Mr. Edmonds.

Upon Defendant arriving at his house, Mr. Edmonds approached Defendant's car.  Mr. Edmonds was not armed with a weapon or holding any object in his hands.  Mr. Edmonds asked Defendant in a "normal" tone of voice "[j]ust tell me how my keys got on your key ring."  Defendant answered, "It must have slipped on there."  In response, Mr. Edmonds and Mr. Hicks laughed, not threatening Defendant in any way.  Defendant then started yelling for his brother Mr. Lyte to get in the car, and acting nervous, shaking and appearing scared.

When Mr. Lyte got to the car, Defendant fired the handgun from inside the car at Mr. Edmonds, hitting him four times--once in his right upper abdomen, once in his right cheek, once in his right elbow, and once in his right upper posterior chest or back.  Mr. Edmonds died as a result of his gunshot wounds.  At the close of the State's evidence, Defendant moved to dismiss the charges, and his motion was denied.

Defendant did not testify at trial but he presented the following evidence: Defendant's brother Mr. Lyte testified that on the night in question Mr. Edmonds, Mr. Hicks, Ms. Parson, Mr. Lyte, and Defendant had been drinking beer and smoking marijuana. Mr. Lyte said Defendant and Mr. Edmonds got in a confrontation about Mr. Edmonds' missing key and Mr. Lyte made several threats concerning Defendant. Specifically, Mr. Edmonds said he could "have one of us missing," and could "have our house shot up." Mr. Lyte also testified that at Mr. Edmonds' house, Mr. Edmonds was not armed, was not holding any object, and never made physical contact with Defendant. Mr. Lyte stated that while he was getting in Defendant's car, he heard gunshots but did not see Defendant shoot Mr. Edmonds.

On 21 November 2012, a jury found Defendant guilty of second-degree murder. The trial court sentenced Defendant to an active term of 157 to 198 months of imprisonment. Defendant gave written notice of appeal from his conviction on 28 November 2012.

## II. Analysis

Defendant argues on appeal that the trial court erred in (1) denying his motion to dismiss for insufficiency of the

evidence; and (2) restricting his right to cross-examine the State's witness in violation of his constitutional rights.

### A. Sufficiency of the Evidence

Defendant contends the trial court erred in denying his motion to dismiss for sufficiency of the evidence because the evidence showed no malice for second-degree murder, but at most only supported a conviction for manslaughter because the facts showed that the killing was committed in the heat of passion under adequate provocation. Defendant contends that the evidence showed there was adequate provocation by the victim's death threats towards him, his brother, and his family and Defendant acted under influence of passion rendering him "incapable of cool reflection[.]"

The standard of review for a trial court's denial of a defendant's motion to dismiss for insufficiency of the evidence is well established:

> A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.

*State v. Johnson*, 203 N.C. App. 718, 724, 693 S.E.2d 145, 148 (2010) (citations and quotation marks omitted). Additionally,

"[t]he Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Phillpott*, ___ N.C. App. ___, ___, 713 S.E.2d 202, 209 (2011) (citation omitted), *disc. review denied*, 365 N.C. 544, 720 S.E.2d 393 (2012). Also, we are not concerned about issues regarding the weight of the evidence. *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455-56, *cert denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000) (citation omitted).

Voluntary manslaughter is the unlawful killing of another human being without malice and without premeditation and deliberation in the heat of passion produced by adequate provocation. *State v. Tidwell*, 323 N.C. 668, 673, 374 S.E.2d 577, 580 (1989) (citation omitted).[1]

---

[1] Voluntary manslaughter can also be established by a showing of imperfect self-defense. *See State v. Lyons,* 340 N.C. 646, 663, 459 S.E.2d 770, 779 (1995). But, here, Defendant's theory at trial was that there was sufficient evidence to establish voluntary manslaughter, not second-degree murder, based on evidence that he shot the victim in the heat of passion with adequate provocation, not pursuant to imperfect self-defense. The trial court gave only an instruction as to voluntary manslaughter based on a heat of passion theory, as requested by Defendant. Defendant raises no argument on appeal regarding the jury instructions.

> A killing is without malice if the defendant acts in the heat of passion upon adequate provocation so that the defendant's state of mind overcomes his ability to reason and to control his actions. *State v. Montague*, 298 N.C. 752, 259 S.E.2d 899 (1979); *State v. Best*, 79 N.C. App. 734, 340 S.E.2d 524 (1986). The act of provocation must be such, however, that it "would naturally and reasonably arouse the passions of an ordinary man beyond his power of control." *State v. McLawhorn*, 270 N.C. 622, 628, 155 S.E.2d 198, 203 (1967).

*State v. Mathis*, 105 N.C. App. 402, 406, 413 S.E.2d 301, 304, *disc. review denied*, 331 N.C. 289, 417 S.E.2d 259 (1992). "Voluntary manslaughter is a lesser included offense of second-degree murder[.]" *State v. Owens*, 65 N.C. App. 107, 109, 308 S.E.2d 494, 497 (1983) (citation omitted).

In contrast, second-degree murder is "[t]he unlawful killing of a human being with malice but without premeditation and deliberation[.]" *State v. Bedford*, 208 N.C. App. 414, 417, 702 S.E.2d 522, 526-27 (2010) (citation and quotation marks omitted).

> What constitutes malice varies depending upon the facts of each case. Our courts have specifically recognized three kinds of malice:
>
> One connotes a positive concept of express hatred, ill-will or spite, sometimes called actual, express or particular malice. Another kind of malice arises when an act which is inherently dangerous to human life

is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief. Both these kinds of malice would support a conviction of murder in the second degree. There is, however, a third kind of malice which is defined as nothing more than that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification.

*State v. Grice*, 131 N.C. App. 48, 53, 505 S.E.2d 166, 169 (1998) (citations and quotation marks omitted), *disc. rev. denied*, 350 N.C. 102, 533 S.E.2d 473 (1999). This third type of malice can be inferred from the intentional inflection of a wound with a deadly weapon that results in death. *State v. Reynolds*, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982); *State v. Deans*, 71 N.C. App. 227, 232, 321 S.E.2d 579, 582 (1984) (stating that malice is presumed when "an individual intentionally takes the life of another with a deadly weapon[.]"), *disc. rev. denied*, 313 N.C. 332, 329 S.E.2d 386 (1985). Therefore, this offense can be established by showing a voluntary unlawful killing committed with a deadly weapon. *State v. Mercer*, 275 N.C. 108, 113, 165 S.E.2d 328, 332 (1975), *overruled on other grounds by State v. Caddell*, 287 N.C. 266, 290, 215 S.E.2d 348, 363 (1975). Second-degree murder "may be reduced to voluntary manslaughter upon a showing that defendant killed his victim in the heat of

passion caused by provocation adequate to negate the element of malice." *State v. Best*, 79 N.C. App. 734, 736-37, 340 S.E.2d 524, 526 (1986) (citation omitted), *overruled on other grounds by State v. Maynor*, 331 N.C. 695, 700, 417 S.E.2d 453, 456 (1992).

Viewing the evidence in the light most favorable to the State, there was sufficient evidence that Defendant intentionally shot and killed Mr. Edmonds with a handgun to establish malice for second-degree murder. The trial court did not err by failing to dismiss the case for insufficiency of evidence. We are unpersuaded by Defendant's argument that evidence only pointed to a conviction for voluntary manslaughter, as his argument suggests that we view the evidence in the light most favorable to him rather than the State. *See Phillpott*, ___ N.C. App. at ___, 713 S.E.2d at 209. Specifically, while testimony was presented that Mr. Edmonds did threaten bodily harm to Defendant during their confrontation, Defendant did not shoot Mr. Edmonds at this time. Rather the evidence showed that there were 10 to 15 minutes between that confrontation and when Defendant drove over to Mr. Edmonds' house and shot him, giving Defendant a cooling-off time between the confrontation and the shooting and showing that the killing

was not done in the "heat of passion."  The jury weighed this evidence in convicting Defendant of second-degree murder, and we will not reweigh it on appeal.  *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455-56.  Accordingly, we find no merit in Defendant's arguments and they are overruled.

### B. Cross-examination of the State's witnesses

Defendant next contends that his right to confront the witnesses against him under Article I, Section 23 of the North Carolina Constitution and the Sixth Amendment of the United States Constitution was violated when the trial court refused his cross-examination of (1) the State's witness, Ms. Deana Smith, about the victim's conviction listed on the back of a fingerprint card; (2) the State's witness, Detective Jason Sondergaard about Defendant's reactions to being arrested which were documented in his police report; and (3) the State's witness, Ms. Shonta Parson, about a prior conviction involving her passing a counterfeit check.  Defendant concludes that because of these infringements on his rights, he is entitled to a new trial.

We note that Defendant failed to raise either constitutional argument at trial.  We have stated that "[i]t is well settled that this Court will not review constitutional

questions that '[were] not raised or passed upon in the trial court.'" *State v. Carpenter*, 155 N.C. App. 35, 41-42, 573 S.E.2d 668, 673 (2002), (quoting *State v. Elam*, 302 N.C. 157, 160-61, 273 S.E.2d 661, 664 (1981)), *disc. review denied*, 356 N.C. 681, 577 S.E.2d 896 (2003); N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make[.]"). Defendant, however, requests, in the alternative, that "to the extent" Defendant did not base his challenges on these constitutional arguments, we review his arguments pursuant to N.C.R. App. P. 2 "to prevent manifest injustice[.]"

Pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, we may exercise our discretion to review Defendant's argument in order to "prevent manifest injustice to a party[.]" *State v. Mobley*, 200 N.C. App. 570, 573, 684 S.E.2d 508, 510 (2009) (citation omitted), *disc. review denied*, 363 N.C. 809, 692 S.E.2d 393 (2010). Our discretion under Rule 2 "is exercised 'cautiously' and only in exceptional circumstances [to consider] significant issues of importance. However, it has been exercised on several occasions to review issues of

constitutional importance." *Id.* (citation omitted). In the case at hand "[t]here are no exceptional circumstances, significant issues, or manifest injustices that would be corrected by our review of the merits of" Defendant's arguments. *Holland v. Heavner*, 164 N.C. App. 218, 222, 595 S.E.2d 224, 228 (2004). We are cognizant of our discretion in this matter, and in light of the consistent, unchallenged evidence concerning Defendant's role in Mr. Edmonds' death, including the testimony of multiple witnesses and evidence presented by the State and the defense, we decline to invoke Rule 2 and will not address Defendant's unpreserved constitutional arguments. *See State v. Davis*, 202 N.C. App. 490, 497, 688 S.E.2d 829, 834 (2010) ("While this Court may pass upon constitutional questions not properly raised at the trial level in the exercise of its supervisory jurisdiction '[t]o prevent manifest injustice [,]' N.C.R. App. P. 2, because there was copious unchallenged evidence before the jury that the substance at issue was cocaine . . . we decline to invoke Rule 2 in this case."). Defendant's constitutional arguments are dismissed.

For the foregoing reasons, we find no error in Defendant's trial.

NO ERROR.

Judge STROUD and Judge HUNTER, JR. concur.

Report Per Rule 30(e).